Harold Thomas **HERMANSEN** alias Ford Hermansen, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15569.

United States Court of Appeals Fifth Circuit.

Jan. 6, 1956.

Rehearing Denied Feb. 23, 1956.

See 230 F.2d 173.

Seymour Lieberman, William H. Scott and John Benn, Houston, Tex., for appellant.

Gordon J. Kroll, Asst. U. S. Atty., Malcolm R. Wilkey, U. S. Atty., Houston, Tex., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a conviction on four counts of an indictment of thirty-five counts for using the mails to defraud.[1]

The indictment alleged substantially the following scheme: That Hermansen devised a scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses and representations, which scheme was in operation and in the process of execution from on or about November 25, 1953, to March 25, 1954; that it was a part of said scheme that Hermansen and his wife would purchase automobiles in various parts of the United States by drawing authorized

1. 18 U.S.C.A. § 1341 and § 371.

drafts on the Radcliff Finance Corporation, in Houston, Texas; that thereafter these vehicles would be transported to a used car lot in Rosenberg, Texas, known as City Motors Sales, owned and operated by the defendants; that thereafter the defendants would cause a chattel mortgage to be drawn reflecting Radcliff as first lienholder of said vehicle and an application for Texas title would be made which reflected such lien in favor of Radcliff, and which said application would be filed with the County Clerk and would in turn be mailed to the Texas State Highway Department in Austin, Texas, where the application was processed and after which the original title would be forwarded to Radcliff; that Hermansen's wife, a joint defendant, would proceed to the State of Mississippi and there obtain from proper authorities "Mississippi Road and Bridge Privilege Tax Certificates," which certificates would then be used to procure Texas certificates of title with identical descriptions of vehicles; that the said certificates described vehicles resembling those which had theretofore been purchased with money furnished by Radcliff and for which Texas title certificates had already been issued, but there would be a slight variance of motor numbers in the Mississippi certificates. Such Mississippi certificates appeared on their face to be issued either to Ace Motor & Implement Company, Mrs. H. T. Hermansen, or City Motors Sales Company; that by all of such acts defendants became possessed of an apparently true, but actually fraudulent Texas certificate of title, which was identical with the true Texas certificate of title in possession of Radcliff, with the exception that the said fraudulent certificate listed a motor number which was slightly at variance with the true motor number, and the first lien of Radcliff was not shown on the fraudulent Texas certificate; that it was a part of said scheme to sell the said vehicles to innocent purchasers under said fraudulent certificates, and defendants would thereafter convert the entire proceeds of such sales to their own use without accounting to Radcliff; that for the purpose of executing and carrying out the scheme, the defendants did on certain dates (all prior to March 25, 1954) "unlawfully, knowingly and fraudulently cause to be placed in an authorized depository for mail matter, to be sent and delivered by the post office establishment of the United States a certain envelope addressed to the Texas State Highway Department, Austin, Texas, and containing a certain application for Texas certificate of title for one certain motor vehicle reflecting the motor number as being * * *" (here each count listed a motor number that corresponded with the number contained in the Mississippi certificate but otherwise described the automobile made the subject of a sale to a purchaser of an automobile having a number that differed as to one digit). The 35th count alleged a conspiracy.

At the conclusion of the government's case, the court dismissed all counts except counts 2, 12, 18 and 28. The jury found appellant guilty on these counts; the jury found appellant's wife not guilty. The court sentenced appellant to three years on count 2, three years to be served concurrently on count 12, and five years on counts 18 and 28, execution on the five year sentence to be suspended for a term of five years, and to pay a fine of $500 on count 2. A motion for new trial was timely filed and overruled.

The basis of appellant's appeal is the alleged errors of the court (1) in failing to hold that if there was a scheme, it was completed before any mailing took place; (2) in charging the jury with the theory of "lulling" because the indictment did not charge that appellant used the United States mail to "lull" any person; (3) in wrongfully charging the jury on the definition of "contemporaneous" in the state of the indictment and evidence; (4) in refusing to grant appellant's motion for acquittal on the ground that evidence showed that any scheme proven had been fully consummated before the mailing of the documents "since it appears from said evidence that the said

alleged scheme was completely executed with respect to transactions in which defendants, or either of them, received money or anything of worth"; (5) in failing to grant a motion for acquittal on the ground of a variance between the evidence and the indictment; (6) in refusing to charge the jury with reference to the law of Texas to the effect that if the jury found that the automobiles involved bore a dealer's license, the purchaser obtained legal title thereto and the defendants could not have defrauded the purchaser and should be acquitted.

The evidence sustained the indictments as to the existence of an agreement between Hermansen and Radcliff whereby Hermansen drew a draft for the purchase of an automobile on Radcliff; and further as to the following facts: That Radcliff, under authority from Hermansen, made application to the proper Texas authorities for a certificate of title showing a first lien in favor of Radcliff; that as to four of these automobiles Hermansen sold them to individuals who believed they were obtaining an automobile free and clear of all liens, and that Hermansen undertook to furnish a Texas title certificate for each of said automobiles, having obtained from each of the purchasers a signed application therefor; that Hermansen thereafter completed these applications by the use of the fictitious number contained in a Mississippi certificate obtained by his wife upon the giving of a motor number differing as to one digit only from that in the bill of sale to each of the four purchasers.

The proof further showed that the purchasers took their automobiles with a dealer's license plate, but when they later sought to obtain their own license plates they inquired from appellant as to the delay in the processing of their applications, and they were falsely informed that such delays were occasioned by the officials and not by reason of the inability of appellant to obtain a correct license because of the outstanding title certificate with a lien in favor of Radcliff. It was admitted by appellant that in March he did cause to be mailed the false certificates containing the fictitious motor numbers in order to obtain license plates for the purchasers.[2] He contended that he did this as an extra service to the purchasers, because an improper claim by Radcliff had interfered with the issuing of the current license plates. His defense was based upon his contention that there was a dispute between him and Radcliff as to the state of their account, and that Radcliff had made application for the Texas title for these automobiles without authority.

Appellant combines his argument on the first four grounds set out above on the theory that the evidence shows that in each transaction on which the jury found him guilty the automobile had been sold, the money received by Hermansen and if there was any fraud, it was completed before any mailing took place; in fact, he says (and the record bears this out) that all four sales had been completed before the first mailing took place; furthermore, appellant says there is no evidence that after any of these mailings he sold any automobiles to others under similar circumstances, that is, when a lien was being asserted by Radcliff.

However, the fact that the exchange of an automobile of bad or doubtful title in return for cash where the seller holds out that he is conveying unclouded title, knowing such representation to be false, and with intent to deceive the purchaser, before there is any use of the mails, does not prevent such use of the mails there-

2. Appellant's brief states this matter as follows:

"* * * during the period immediately preceding the time necessary to take out licenses on motor vehicles, the Appellant, in order to protect the purchasers with licenses, placed in the United States mails false certificates in order to get around the unauthorized liens filed by Radcliff Finance Corporation so that licenses could be procured for the customers pending a settlement with the Radcliff Finance Company, which Appellant claimed owed him considerable money, based on the pledging of $145,000.00 worth of notes."

after from being a violation of the statute if, in fact, the use of the mails, *whenever occurring*, is *in furtherance of* the scheme to defraud. United States v. Riedel, 7 Cir., 126 F.2d 81.

■ The fact that a fraud had been completed one to three months before the mailing took place is no defense where, as here, the mailing was necessarily contemplated as an essential part of the sale of the car itself. The indictment charges that "the defendants would, and they did, sell the said vehicles to innocent purchasers under the said fraudulent certificate of title." The proof showed that at the time the sale was made each purchaser signed an application for title certificate and left it with defendant; some witnesses testified that defendant specifically stated he would obtain a title for them. He actually obtained, through the use of the signed applications with the fictitious number inserted by Hermansen's agent, a license for a non-existent vehicle. Thus, it is seen that the jury was justified in finding that a scheme existed whereby the defendant sold "the said vehicles to innocent purchasers under the said fraudulent certificate of title," just as alleged in the indictment. It is immaterial that the money passed and the vehicle was delivered (with a dealer's license good for only 10 days) well before the false certificate was actually obtained. The sale was nevertheless *under* the fraudulent certificate. This being the case, the mailing of the signed applications, whenever it took place, was an essential part of the scheme. The mailing was not, as appellant contends, something he did as a favor to the purchasers. Appellant delivered each of the automobiles with a cardboard dealer's license attached to it. This was good for only 10 days. He was bound to have had some plan in mind to replace this license with an owner's plate. What he had in mind is clearly indicated by his action in taking from each purchaser a signed application blank. The jury must have found that what he had in mind was what he actually did thereafter; he

would obtain a false Mississippi certificate, use it as a basis for filling out the signed application, and send it in to obtain a false license which he would deliver to the purchaser in accordance with his actual or implied agreement made at the time of sale.

In support of his contention that there was a fatal variance between the indictment and the proof, appellant first criticizes the court for charging the jury on the theory of "lulling" when the indictment does not set out that the appellant used the United States mails to lull any person.

■■ What we have said above sufficiently answers the criticism of appellant that the mere lapse of from several weeks to four months between the act of selling the car and the mailing of the application for license, prevented the mailing from being in furtherance of the alleged fraudulent scheme. During the trial, evidence adduced by the government showed that the purchasers who had bought the automobiles on the representation by defendant that he would obtain a Texas license for them, repeatedly called on him to carry out this agreement. The evidence shows also that defendant made various excuses as to why he had not done so, followed finally by the mailing of the false applications. The gist of the offense in the indictment was the concoction of the scheme and the use of the mails in furtherance thereof. As we have already pointed out, there is sufficient evidence to justify the jury's finding that the mails were used for the purpose of executing and carrying out the alleged scheme. It is not necessary that the indictment allege in detail the reasons why any particular part of the scheme was included in it, so long as the indictment alleges enough so that the defendant is definitely informed of the charges against him so that he may present his defense and that he may not be surprised by evidence offered at the trial, and so that if convicted such conviction can be pleaded as res judicata. Kreuter v. United States, 5 Cir., 218 F.2d 532. The evidence here

authorized the jury to find that the reason why the accused included in his scheme the mailing of the false certificates was to lull the purchasers into the belief that they were acquiring, or had acquired, a good title. Such proof was properly adjusted to the allegations in the indictment and no objection was made by the accused to the introduction of evidence tending to prove this fact. The charge of the court on this point was, therefore, without error.

■ The appellant next charges that there was a fatal variance by pointing out that whereas the indictment says City Motors Sales was at all times material to the indictment owned and operated by the defendant, the proof shows that City Motors Sales was a corporation. There is no merit in this contention.

■ Appellant next makes the point that the indictment charged "that thereafter the defendants would cause a chattel mortgage to be drawn reflecting Radcliff Finance Corporation as the first lien-holder of said vehicle"; whereas no chattel mortgages were introduced by the Government and there is no evidence that indicates that any chattel mortgages were drawn as to any of the automobiles in question. The weakness of appellant's argument as to this point is apparent when we consider the only argument made to support it. Appellant's brief says: "Therefore, the attempt by the government to show that the appellant was selling mortgaged property, and was, therefore, making a fraudulent sale, completely fails because no mortgage was intoduced by the Government. * * *" The evidence clearly disclosed that there was a recorded first lien against the vehicles, this being recorded by its inclusion on the original title certificate issued by the state of Texas at the request of Radcliff under the authority given to Radcliff by Hermansen. The fact that such title certificate, being the only genuine title certificate on the vehicles in question, was a necessary instrument in the passage of title from the purchasers and in the acquisition of their license plates, contained an entry showing a first lien in favor of Radcliff, created as much of a cloud on the title to the automobiles as though a chattel mortgage had been executed and filed. Furthermore, Hermansen's testimony repeatedly tells of a "floor plan" arrangement which he had with Radcliff. He testified that when he bought a car Radcliff advanced the money under an arrangement which enabled Radcliff to hold the "title." He also testified that during the period of time covered by the alleged scheme he was selling cars all the time and he was "having a hard time delivering titles"; that sometimes there would be "as much as two or three months' delay in delivering the titles." It was clear from his evidence that this was because Radcliff was holding the titles as security for the purchase price of automobiles which it had advanced. In view of the fact that the indictment otherwise correctly alleged that Radcliff sent the documents to the state of Texas for the issuance of the title certificates and that they were issued showing a first lien in favor of Radcliff, it is immaterial that the particular type of lien alleged in the indictment was not proven.

■ Appellant finally argues that there was no fraud in the sale of the automobiles because under the Texas statute a transfer of title by a dealer of a new car could be accomplished without such sale being predicated upon the delivery of a certificate of title. This argument is unavailing, because under the evidence appellant did undertake to deliver the new automobiles on his undertaking that he would furnish a valid certificate of title, and the proof also fully authorized the jury to find that the purchasers were defrauded under a scheme or device concocted by appellant when they were sold automobiles carrying a dealer's cardboard license good for ten days only, when the seller knew that he could not perfect a valid Texas title under the then existing circumstances. There is nothing in Motor Investment Co. v. Knox City, 141 Tex. 530, 174 S.W. 2d 482, that says that the delivery by a

dealer with his dealer's license conveys any better title than he has. It merely holds that, if otherwise good, the mere failure to furnish a Texas title certificate does not prevent a valid sale by a dealer to the purchaser. Here the jury found the fraud existed when Hermansen purported to transfer a car that was free of all encumbrances and on which a Texas certificate of title could be obtained when he knew this to be impossible by reason of the outstanding lien in favor of Radcliff, as evidenced by the entry on the valid title certificate. We cannot reweigh the evidence on which the jury made this finding. Hermansen sought to explain the transaction differently. The jury could have, but did not, accept his explanation. Its verdict is supported by substantial evidence.

We find no error in the other challenged parts of the court's charge.

The judgment is

Affirmed.