Charles C. **HARRIS**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 16083.

United States Court of Appeals
Fifth Circuit.

Jan. 4, 1957.

Charles C. Harris, Springfield, Mo., in pro. per.

Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

BROWN, Circuit Judge.

Harris,[1] convicted of sending to Kay Frances Williams a photographic negative of an obscene picture through the mails in violation of 18 U.S.C.A. § 1461 after a vigorous defense by able Court-appointed counsel, appeals now *pro se* with numerous [2] complaints of error.

The only substantial question is whether harmful error was committed by the Trial Court in allowing considerable testimony to come in showing that Harris's purpose in taking, using and transmitting the picture (or negative) was to coerce Kay Williams into working for him as a prostitute.

The case and her story, as that of her sister Bertus Ayres, was certainly bizarre. Kay apparently sought out Abdullah for guidance. He excited, if not planted, uncertainty in her mind over her husband's love and fidelity. After coming back a now undetermined number of times for further advice about her husband, Abdullah suggested that Kay, to get the needed money to permit the consultations to continue, should work as a prostitute for him. Tenacious, she asserted, in her unrelenting interest in her husband's welfare, and apprehensive that Abdullah would exercise his "voodoo" powers, she kept coming back. On one such occasion, although strangely, not the last one, Abdullah ushered her to a back room where certain psychology books were read. During this seance, after drinking colorless, tasteless liquid, Kay suddenly became dizzy and the next thing she knew, Abdullah was helping her take her clothes off. This was followed by her posing, nearly nude, partly, but provoca-

1. Harris denied sending the picture. But Harris and the witness Kay Williams were in agreement that it was taken for circulation on the "South Side" of Fort Worth amongst other Negroes either to coerce Kay and her sister into prostitution, as they claimed, or, as claimed by Harris, to further their proposed plan of prostitution which had been the subject of consultation with him as a mystic, self-styled fortune teller-psychologist-adviser under his other, Moslem, name of "Abdullah" or Mahniqu Khalil Dejazgomah.

2. (1) In forcing upon Harris an unwanted court-appointed attorney; (2) insufficient indictment; (3) persistent leading questions by Government counsel; (4) failure to declare a mistrial on the prosecution's evidence and charge that Harris intended the negative to be used for blackmail purposes; (5) the negative was not, in fact or law, an obscene, lewd, or lascivious picture; (6) failure to grant motion for judgment of acquittal; (7) sentence was excessive.

As to (1) the complaint is really for appointment of his "first" counsel whom the Court allowed, long before trial, to withdraw after Harris became highly critical because the lawyer, suggesting a mental examination, 18 U.S.C.A. § 4244, subsequently ordered by the Court, expressed concern over Harris' mental competency because of his conduct, dress and appearance which included a "turban", but which Harris indignantly insists was a maroon fez. Subsequently, an abortive trial, with Harris as his own counsel, ended abruptly in a mistrial after he contumaciously defied a direction of the Court in voir dire examination of the jury panel. The trial, ending in conviction, was held three months later with new appointed defense counsel.

tively draped, for the picture in question. The posing done, dizziness disappeared, senses and composure were immediately regained, and both insisted that nothing else had transpired. Kay, returning on a later day, was then told by Harris that the pictures (four had been taken) would be circulated on the South Side. Subsequently Harris repeated the threat by telephone and told her he would send one of the pictures to her by mail. In the meantime, Kay's sister Bertus was likewise his steady patron, drank of the magic potion, found herself disrobing, soon posing, even more so.

Within a couple of weeks, an envelope enclosing a covering letter,[3] both overwhelmingly established to have been in Harris's handwriting, was delivered through the mails addressed to Kay. Kay and her sister positively asserted that the negative was enclosed in that letter.

After a considerable amount of testimony about prostitution had come in, defense counsel, nowhere objecting to its admissibility, sought and obtained an immediate instruction that the jury should consider it solely in determining whether Harris actually mailed the picture, the purpose for which it had been taken and transmitted and should not consider it as showing that he had committed other crimes for which he was not then on trial. The defense indicated full satisfaction with that course and, more important, then proceeded by strenuous cross examination to develop it in great detail, adding much to this unsavory portrait. Efforts were made to force Kay and Bertus into an admission that one or both

had formerly been prostitutes, were each violently incensed when each learned that Abdullah was trifling with the other (the implication being that the episodes did not end in a mere exposure of body and film) and reporting the matter to the FBI and Postal authorities was for pure vengeance. Much of this was to lay the groundwork for Harris's story, given later as a witness in his own defense.

In this, affording the jury much basis for infusing credibility into the weird tale of Kay, Harris admitted the pictures[4] were taken at his place and that their purpose was to advance the sisters' prostitution. He asserted, however, that Kay and Bertus, contemplating prostitution, sought his advice. Aiding a self-analysis, pro and con, of the project, and despairing in his "professional" efforts to dissuade them from it, he then decided that, as they persisted in their proposed plans, he would permit them to take at his place, the alluring pictures needed for circulation in the area of their operation.

Not until cross examination of Harris on his prior and extensive criminal record elicited an objection of remoteness did the word "blackmail" come out.[5] Denying motion for mistrial, the Court instantaneously instructed the jury not to consider it. The word, of common meaning, added nothing to the full and voluntary exploration of the whole matter of prostitution and its relation to this picture.

Invited and pursued by the defense, Harris cannot now transmute this into error by the Trial Court. In the face of Kay's strange and almost fantastic story, it was not for the Judge to intrude or prohibit the obviously skilled, effective

---

3.                        "4/6/55
"Dear Mrs. Williams:
"This is a sample and an example.
Yours very truly
*M.K.D."
* Note: Apparently corresponds to his other name Mahniqu Khalil Dejazgomah.
Also enclosed were three sheets bearing completely unintelligible scribbled lines.

4. He even offered in evidence one equally revolting picture of Bertus and admitted that the two women had left the pictures in his possession.

5. District Attorney: " * * * it would be the government's position that some of the items have something to do with something directly in this case, that is the purpose for which this picture was made, it is the government's position this picture was made for blackmail purposes."

cross examination of these damaging witnesses. If it were a mistake to develop it so extensively, or to refrain from vigorous objection to it, or its admission would otherwise have been erroneous, which we need not determine, this neither makes it the Court's error nor a palpable one of defense counsel so fundamental that we should correct it. On the contrary, this was a legitimate, well-grounded strategy with implementing trial tactics to destroy credibility of Kay and Bertus by piercing cross examination stating, restating, dissecting and exploring these many repulsive acts, their motives and surroundings.

The other claims of error are equally unconvincing.

■ The indictment was adequate and plainly charged the offense of mailing an identifiable obscene picture at a specific time to a specified person. And to the extent that the picture lacked precise description, the exact print (negative) was known to defendant and counsel before trial, and its identity could, on a plea of former jeopardy, be established by evidence. Johnson v. United States, 5 Cir., 124 F.2d 101; see also Hermansen v. United States, 5 Cir., 228 F.2d 495, certiorari denied 351 U.S. 924, 76 S.Ct. 781, 100 L.Ed. 1455; Cagnina v. United States, 5 Cir., 223 F.2d 149.

■■ The Court's action in appointing, and appointed counsel's actions, in conducting, the defense was in the best and highest traditions of our system which assures competent, fearless, energetic counsel to an accused. Skilled and experienced in criminal matters, held in high esteem at the Bar, counsel faithfully employed his talents and professional judgment to secure acquittal. This automatically disposes of the claimed error of permitting excessive leading questions. Counsel did not object, may well have thought it tactically wise to allow the witnesses to extend themselves and, in any case, this is a matter innately under the immediate governance of the Trial Judge whose discretion must be plainly demonstrated to have been abused.

■ The four-year sentence, while a heavy one, was permissible and no showing is made that the Court abused the discretion reposed in him or was influenced by, or considered, unwarranted factors.

■ This leaves then only the question whether judgment of acquittal ought to have been granted because the article mailed was not an obscene picture. Neither literature nor jurisprudence will be advanced by adding to this dissolute portrait a detailed description of the negative print which Harris admitted was made for the "purpose of arousing lust in prospective customers." The image reflected was plainly visible and readily capable of being reproduced; it was a picture. A competent art expert testified it had no artistic, educational or scientific value and, displaying a partially draped nude in a vulgar provocative pose, it met the whole catalogue of definitions set forth in such detail in Sunshine Book Co. v. Summerfield, D.C.D.C., 128 F.Supp. 564; and Parmelee v. United States, 72 App.D.C. 205, 113 F.2d 729. And it was the standard set forth in these cases and others, e. g., United States v. Levine, 2 Cir., 83 F.2d 156; United States v. One Book Entitled Ulysses, 2 Cir., 72 F.2d 705, which was carefully paraphrased by the Court in the charge to the jury.

It was for the jury to say whether Harris mailed the picture and whether it was obscene. Under correct instructions upon abundant evidence, the verdict of guilty was their answer. The trial was fair and the judgment is affirmed.

Affirmed.

CAMERON, Circuit Judge (dissenting).

I dissent. Such cheap vulgarity as characterized the actions of all of the participants in this sordid affair ought, in my opinion, to be dealt with on the local Police Court Blotter. The nonmailable-matter statutes were never in-

tended, in my judgment, to cover such a situation. Nor do I think the Federal Government has any business in a case based upon actions bearing such an incidental and remote relationship to its legitimate competence.