**Edward Morgan MacKENNA, Appellant,**

v.

**O. B. ELLIS, Director, Texas Department of Corrections, Appellee.**

**No. 17213.**

United States Court of Appeals Fifth Circuit.

Jan. 16, 1959.

Rehearing Denied March 20, 1959.

---

Edward Morgan MacKenna, in pro. per.

Linward Shivers, Asst. Atty. Gen., Will Wilson, Atty. Gen., B. H. Timmins, Jr., Asst. Atty. Gen., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and WISDOM, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a final judgment declining either to grant the Writ of Habeas Corpus or to enter an order to show cause. The district judge, believ-

ing the appeal to be without merit, declined to allow it to proceed in forma pauperis under Section 1915, Title 28 U.S.C.A., and also declined to issue a certificate of probable cause under Section 2253 of said Title. However, on April 4, 1958, a panel of this Court, consisting of Judges Rives, Tuttle, and Jones, granted a certificate of probable cause and the right to appeal in forma pauperis.

On December 5, 1955, an indictment was returned in the Criminal District Court of Dallas County, Texas, charging in substance:

"* * * that one Edward Morgan MacKenna on or about the 18th day of October in the year of our Lord One Thousand Nine Hundred and 55, in the County and State aforesaid, did unlawfully and fraudulently take one camera, of the value of $225.00, and one case, of the value of $25.00, all of which is of the total value of $250.00 and the aggregate value of over fifty dollars, the same being the corporeal personal property of Squire Haskins from the possession of the said Squire Haskins without the consent of the said Squire Haskins and with the intent to deprive the said Squire Haskins of the value thereof, and with the intent to appropriate it to the use and benefit of him, the said Edward Morgan MacKenna. Against the peace and dignity of the State."

On October 2, 1956, a jury in said Court returned its verdict finding the defendant guilty as charged in the indictment and assessing his punishment at eight (8) years confinement in the penitentiary. Upon that verdict, judgment of conviction was entered on the same day. On November 1, said Court overruled the defendant's motion for new trial and then sentenced him to be confined in the penitentiary for not less than two (2) nor more than eight (8) years.

Acting pro se, the defendant perfected an appeal from the judgment of conviction. On April 3, 1957, the judgment was affirmed by the Court of Criminal Appeals of Texas in an opinion reported in MacKenna v. State, 301 S.W.2d 657. On October 14, 1957, the Supreme Court of the United States denied the defendant's petition for certiorari, 355 U.S. 851, 78 S.Ct. 70, 2 L.Ed.2d 55, rehearing denied 355 U.S. 886, 78 S.Ct. 152, 2 L.Ed.2d 116. Meanwhile, on July 30, 1957, the court of original jurisdiction had, without hearing, denied a petition for habeas corpus. On October 31, 1957, the Court of Criminal Appeals of Texas refused permission to file writ of habeas corpus, without written opinion. It appears that MacKenna has exhausted the remedies available in the Courts of the State of Texas as required by 28 U.S.C.A. § 2254.

On December 3, 1957, he filed his petition for habeas corpus in the United States District Court for the Southern District of Texas. In contrast to most such petitions filed pro se, in forma pauperis, this one was extremely well written and evidenced a considerable, though at times faulty and inaccurate, knowledge of law. The explanation probably lies in facts disclosed by the transcript of evidence taken upon MacKenna's criminal trial. There it was proved that he is an educated man, two years at Tulane, and two years at Northwestern, graduating from Northwestern in 1934, and since then, working for a number of newspapers and becoming a feature writer for several periodicals. Also, on cross-examination, MacKenna admitted that he had a long record of no less than seven previous convictions for crime. Asked on re-direct examination whether he would care to explain to the jury the reason for the commission of those crimes, MacKenna answered:

"Yes; alcohol. Overindulgence. Since 1953 I have been a member of A.A. I expected two of the members of A.A. to be up here today. Unfortunately, they are not here, not able to be here."

He has consistently denied his guilt of the theft of the camera and case. His testimony upon his criminal trial was substantially in accord with the more

succinct statement in his petition for habeas corpus, viz.:

"In October, 1955, petitioner inadvertently came into possession of an encased camera which, he determined subsequent to acquisition, had been apparently stolen prior to coming into his possession. The petitioner neither stole the camera, nor did he know it was stolen when acquired. The camera was left in petitioner's possession by an acquaintance, and upon discovery of the name and address of a Dallas commercial photographer on the bottom of the case, petitioner realized he had stolen property on his hands.

"For more than 2 weeks petitioner attempted to find a way to return the camera to its rightful owner, without jeopardy to himself. For adequate reason—petitioner was on a Governor's pardon from the Texas Penitentiary at the time—petitioner could not return the camera in a normal manner open to one unencumbered by such a handicap.

"After days of searching thought petitioner finally decided to see the camera safely back in its owner's possession by placing it in a rental locker and mailing the key to the owner.

"Putting this plan into action, petitioner brought the camera and case into the Union Bus Terminal in Dallas on the morning of November 3, 1955, placed the case containing the camera in a rental locker, locked the locker, pocketed the key and stepped into an adjacent drugstore to buy a special delivery stamp.

"Upon emerging from the drugstore petitioner was confronted and stopped by two Dallas policemen— Officer Pope, in civilian clothes and off-duty, and Officer Wise, uniformed man assigned to the bus terminal. Officer Pope, who knew petitioner by sight and name, told petitioner he was under arrest, searched him, removed the key from petitioner's pocket, opened the locker and took out the case. Officer Pope then opened the case, exposed the camera and told petitioner he would ' * * * have to go downtown and explain it.'

"Petitioner was taken to the City Jail and booked on a charge of theft of the camera."

The evidence to sustain his conviction consisted of his recent possession of stolen property.

Upon being presented with the petition for habeas corpus, the district court, citing Baker v. Ellis, 5 Cir., 1952, 194 F. 2d 865, entered an order requiring the respondent to file a full and detailed answer within thirty days and giving the petitioner an opportunity to reply to that answer. After the filing of respondent's answer and petitioner's reply, and after considering the record thus made of the petition, answer, and reply, the district court declined to grant the writ or to enter a show cause order.

The grounds upon which appellant seeks habeas corpus are substantially four, two of which may be briefly disposed of as without merit.

■ (1) Appellant claims that his conviction resulted from a conspiracy contrived by the prosecution. His sole ground for that claim is expressed in a "Note" to his petition as follows:

"(Note: Petitioner feels it significant at this point to call to the attention of this Court the fact both counsel assigned by the trial Court, within 60 days of the trial of October 2, 1956, went to work in the office of the District Attorney of Dallas County as assistant district attorneys.)"

That, of course, is the averment of a mere suspicion and does not comply with Rule 9(b), Federal Rules of Civil Procedure, 28 U.S.C.A., requiring the circumstances constituting any claimed fraud to be stated with particularity. Our full examination of the record discloses no substantial ground for suspicion of any such conspiracy, and we have no

doubt as to the integrity either of the prosecuting attorney or of defense counsel.

■ (2) Appellant claims that he was illegally arrested and the key to the locker removed from his person by an illegal search, that the overruling of his objection to the finding of the camera and case in the locker forced him to testify in his own defense, and to be subjected to cross-examination disclosing his long previous criminal record, and that thereafter his conviction was a foregone conclusion. The Texas Court of Criminal Appeals answered that contention as follows:

"* * * Appellant, having admitted his possession of the camera and case was in no position to complain of the search and admission of the articles in evidence. Soble v. State, Tex.Cr.App., 218 S.W.2d 195

and Salinas v. State, 159 Tex.Cr.R. 619, 266 S.W.2d 388." MacKenna v. State, 1957, 301 S.W.2d 657, 658.

If we assume that the arrest and search were illegal, we are nevertheless of the opinion that the admission in evidence in a State court of the fruits of an illegal search by State Officers presents no substantial federal constitutional question. Wolf v. People of State of Colorado, 1949, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782.

■ The remaining two grounds which have more substance are: (3) that the trial court forced the appellant, over his objection, to accept representation of counsel appointed by the court; and (4) that he was given no reasonable opportunity to secure the presence and testimony of his witnesses.[1]

1. Appellant alleges in his petition:

"Now, petitioner was committed to the Dallas County Jail on March 12, 1956, on the charge in the indictment, supra. Three times during the following six months—once each in April, May, and June—petitioner's name appeared on the official court docket of the Criminal District Courts of Dallas County for appearance in court to answer said indictment. Each and every time the scheduled appearance was postponed at the request of the prosecution; no explanation was offered to petitioner, none could be obtained.

"Finally, after 6 months and 18 days in the Dallas County Jail, petitioner was slated once again for appearance in court —on September 28, 1956. On this date, for the first time, petitioner was taken from the jail to Criminal District Court No. 3.

"The sum and substance of this appearance was as follows: Judge McCormack ascended the bench, beckoned petitioner forward and asked if he had counsel to represent him. Petitioner replied affirmatively, stating that he was negoiating (sic) with a Dallas attorney, Mr. Ben Henderson, to handle the case. Without further ado, the Court informed petitioner it was appointing counsel to represent him.

"Petitioner raised immediate objection to the Court's action, protesting he had neither asked assignment of counsel, nor did he want counsel assigned. Judge Mc-

Cormack ordered petitioner to be quiet and to sit down.

"Shortly thereafter, two young men came over to where petitioner sat in the courtroom, introduced themselves as Collier and Tucker and stated they had been appointed by the court to represent him. They also stated they were just out of the SMU Law School and that they had never before had a jury trial. As a matter of fact, they had handled only one prior case—a plea of guilty the week before.

"For about 15 minutes, petitioner and these two boys talked in the courtroom. The case at hand was touched on only superficially. Petitioner indicated in no way, either verbally or in writing, that he was willing to accept them as counsel. After the brief talk, petitioner was taken back to the County Jail.

"One court day later, on October 2, 1956, without the slightest word of warning, petitioner was summoned from the County Jail, taken back to Court and advised he was to be tried forthwith.

"Petitioner protested immediately there had been no advance notice whatsoever of the trial, so that the defense witnesses could be notified. Petitioner asked the assigned counsel to move for continuance, on the ground the defense witnesses were not present and had not been notified, and in reply, they advised petitioner they had already done so and that the Court had refused the motion. The trial had to be held, they added, because another trial orginally scheduled for that date,

(3) Upon his appeal from his judgment of conviction, MacKenna presented ten formal Bills of Exception stated to be "drawn up in conformity with the provisions of Article 760 of the Code of Criminal Procedure of the State of Texas," upon which the court entered the following order:

"The foregoing ten formal Bills of Exception were to me presented in writing by the defendant, Edward Morgan MacKenna, in person, on this the 25th day of January, A.D. 1957, and the same having been examined by me and having been by me submitted to counsel for the State, the same are found to be correct and are hereby allowed, approved, signed and ordered filed as part of the record in this case.

"/s/ Joe B. Brown
"Judge, Criminal District Court
"No 3, of Dallas County, Texas."

Exception I, so found to be correct and allowed and approved by the court, reads as follows:

"Exception I
"Defendant was committed to the Dallas County Jail on March 12, 1956, on the indictment numbered above. In the ensuing 6 months, defendant's name appeared on the official court docket three times—once each in April, May and July—for appearance in Criminal District Court No. 3, to answer said indictment. Without apparent reason and without explanation, defendant was not taken to court on any of the noted occasions, or on any other occasion during the stated 6 month period.

"On September 28, 1956, scheduled for appearance in Criminal District Court No. 3, once again, after 6 months and 17 days in the County Jail, defendant was taken to court for the first time.

"The Court (Dwight L. McCormack, Judge,) asked defendant if he had counsel to represent him. Defendant replied he was negotiating with counsel of his own choice to handle the case. The Court then informed defendant that it was appointing counsel, and, over protest, proceeded to do so.

"Then and there, in open Court, the defendant took exception to the action."

That exception tends strongly to sustain the ground which we have designated (3). For some reason, not apparent to us, the Texas Court of Criminal Appeals did not deal with that exception in its opinion (301 S.W.2d 657). In his brief on this appeal, appellant urges:

" * * * Appellant neither desired, nor asked, Judge McCormack to assign defense counsel; appellant would have rather defended himself. At least, had appellant defended himself, he would have been certain the defense witnesses were present for the trial!"

■ The defendant was entitled to a fair opportunity to secure counsel of his own choice.[2] Here, however, more than six months after his arrest and when there was no claim that he was prevented from communicating with counsel, he had reached only the negotiating stage. It was not error for the court to proceed without such counsel.[3]

■■ The bill of exceptions states, however, that the court, over protest, pro-

that of a Latin American, had been postponed by the Court due to inability to find an interpreter, and that petitioner's trial had been 'moved up.' Petitioner himself asked for continuance—the very first request made by petitioner in this case for continuance—but the Court refused the request and ordered the jury selected.
"And the trial was launched."

2. Powell v. State of Alabama, 1932, 287 U.S. 45, 70, 53 S.Ct. 55, 77 L.Ed. 158; 23 C.J.S. Criminal Law § 979, p. 318.

3. Neufield v. United States, 1941, 73 App. D.C. 174, 118 F.2d 375, 383; Harris v. United States, 5 Cir., 1957, 239 F.2d 612, 615; Moore v. United States, 1955, 95 U.S.App.D.C. 92, 220 F.2d 198, 199.

eeeded to appoint counsel for the defendant. The defendant, being sui juris and mentally competent, had a right to rely on his own skill and ability and to conduct his defense in person without the assistance of counsel; and the court was not justified in imposing assigned counsel on the defendant against his will.[4] Clearly, we think, it would be a denial of due process of law for the court to refuse to permit the accused, sui juris and mentally competent, to defend himself and, instead, require him to accept the services of inexperienced and incompetent counsel, as is alleged in the petition for habeas corpus. The appellant is entitled to a hearing to ascertain the truth or falsity of such allegations. Walker v. Johnston, 1941, 312 U.S. 275, 286, 61 S.Ct. 574, 85 L.Ed. 830; Waley v. Johnston, 1942, 316 U.S. 101, 104, 62 S.Ct. 964, 86 L.Ed. 1302.

(4) Exception II, which the trial court also "found to be correct and * * * allowed (and) approved * * *," was as follows:

"Exception II

■ "Two court days after appointment of counsel, above, defendant was taken back to court on October 2, 1956, and advised his trial had been 'moved up' because of postponement of another trial, and that he was to be tried forthwith.

"Defendant protested he had not had time to contact the witnesses who wished to appear in his defense, and asked for a continuance. Defendant has never theretofore asked for a continuance in the cause. The defense counsel appointed by the Court advised defendant they had moved for continuance, but that the Court had overruled the motion.

"Then and there, in open Court defendant excepted."

4. Adams v. United States ex rel. McCann, 1942, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268; United States v. Private Brands, 2 Cir., 1957, 250 F.2d 554, 557; Simpson v. State, 1941, 141 Tex.Cr.R. 324, 148 S.W.2d 852, 853;

The Texas Court of Criminal Appeals disposed of that exception as follows:

"While Bill of Exception No. II certifies that on the day the case proceeded to trial appellant 'protested he had not had time to contact the witnesses who wished to appear in his defense and asked for a continuance', the bill is insufficient as the application for continuance is not shown therein. Pena v. State, Tex.Cr.App., 1 S.W.2d 1095; Williams v. State, 115 Tex.Cr.R. 574, 27 S.W.2d 217 and Chavez v. State, 147 Tex.Cr.R. 423, 181 S.W.2d 85."

The appellee insists in brief (page 9) that, "Appellant was precluded from pleading the Court's failure to grant a Continuance in order to secure the presence of a witness, for the reason that none of the requirements of Article 543 (of the Texas Code of Criminal Procedure) were met * * *." That Article reads:

"*Art. 543.* [608] [597] *First application by defendant*

"In the first application by the defendant for for a continuance, it shall be necessary, if the same be on account of the absence of a witness, to state:

"1. The name of the witness and his residence, if known, or that his residence is not known.

"2. The diligence which has been used to procure his attendance; and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpoena, in cases where the law authorized an attachment to issue.

"3. The facts which are expected to be proved by the witness, and it must appear to the court that they are material.

Compton v. State, 1912, 67 Tex.Cr.R. 50, 148 S.W. 580, 582; 23 C.J.S. Criminal Law § 979, p. 317; 14 Am.Jur., Criminal Law, § 169; Annotation, 17 A.L.R. 266.

"4. That the witness is not absent by the procurement of consent of the defendant.

"5. That the application is not made for delay.

"6. That there is no reasonable expectation that attendance of the witness can be secured during the present term of court by a postponement of the trial to some future day of said term. The truth of the first, or any subsequent application, as well as the merit of the ground set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. If an application for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted, and the cause continued or postponed to a future day of the same term."

■ Such detailed and technical requirements of a motion for continuance, no doubt, serve a salutary purpose in a proper case, but they cannot justify putting a defendant to trial when he has been given no fair opportunity to secure the attendance of his witnesses. In any event, going outside the record and even contradicting the record are too flimsy grounds to justify a denial to defendant of important constitutional rights.[5]

The record shows that MacKenna himself was the only witness who testified in his defense on the criminal trial. With his motion for new trial the defendant presented the affidavits of several witnesses, all but one of which affidavits were to the following effect:

"That he would have testified in behalf of said defendant in the trial of the above issue, had there been sufficient advance notice of such trial for deponent to arrange his business matter so as to be able to appear and testify in behalf of said defendant.

"That advancement of the trial date to October 2, 1956, on the morning of October 2, 1956, precluded deponent from appearing and testifying in behalf of said defendant, * * *.

"That deponent believes such testimony he might have offered would have carried weight with the jury at said trial, and that the testimony would have affected the verdict of said jury.

"That deponent will testify in behalf of said defendant, if said defendant is granted a new trial in the above-entitled issue."

Madonna Orth Davenport's affidavit was to the following effect:

"That on the 18th day of October, 1955, she was the legally-wedded wife of said defendant, having married said defendant theretofore, with said marriage being recorded in the Office of the County Clerk, Collin County, McKinney, Texas.

"That deponent did, on each and every workday, Monday through Friday, inclusive, during the month of October, 1955, drive to 2218 North Harwood Street, Dallas, where said defendant was employed at the Wholesale Printing Company, at times ranging from 5:00 to 5:30 PM, pick up said defendant and then drive said defendant home, at 5328 Rowena Street, Dallas, Texas, which they shared.

"That deponent and said defendant did spend together each and every evening during the month of

5. Palmer v. Ashe, 1951, 342 U.S. 134, 137, 72 S.Ct. 191, 96 L.Ed. 154; Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 468, 58 S.Ct. 1019, 82 L.Ed. 1461. See also dissenting opinion in Massey v. Moore, 5 Cir., 1953, 205 F.2d 665, 671, reversed 348 U.S. 105, 75 S.Ct. 145, 99 L.Ed. 135.

October, 1955, and this specifically includes the evening of October 18, 1955.

"That deponent and said defendant, being together, did not go to the State Fair Grounds on the evening of October 18, 1955."

In his brief, appellant succinctly summarizes what he claims would have been the testimony of his witnesses, if he had been given an opportunity to produce them:

"June Chapman, bookkeeper at the Wholesale Printing Company, 2218 North Harwood Street, Dallas, on the basis of appellant's time card of Tuesday, October 18, 1955, and on the payroll records of that company, could and would have testified that appellant was at work from 8:00 A.M. to 4:35 P.M. on Tuesday, October 18, 1955, the date of the alleged theft.

"Mr. Ward B. Chandler, Editor at the same company, could and would have offered vital testimony from the records and from his personal knowledge, corrobating (sic) the fact appellant was at work, during the time period noted above, on the date of the alleged theft, October 18, 1955. Further, Mr. Chandler could have (sic) would have offered favorable testimony as to the appellant's character, work and social relationships. (R. 64, Appendix 'C', pp. 17–18.)

"Madonna Orth MacKenna, (now Madonna Orth Davenport), 301 Wallace Drive, Garland, Texas, appellant's wife at the time, could and would have offered vital and material testimony showing that she picked appellant up at his place of employment, 2218 North Harwood Street, after work on the afternoon of October 18, 1955, as was her unfailing custom, that she drove him home, that she spent the remainder of the evening with him, and that they specifically did not go (sic) the State Fair grounds, the scene of the alleged theft, on the 18th of October, 1955. (R. 64, Appendix 'C' p. 19.)

"Dr. John F. Anderson, Jr., Pastor, First Presbyterian Church, Dallas, could and would have testified as to his calling on Fred Bruner, then Chief Assistant District Attorney of Dallas County, to demand and obtain a polygraph test for appellant. Further, he could and would have testified that he, Dr. Anderson, was subsequently notified by Mr. Bruner that appellant had successfully passed said lie detector test. Further, Dr. Anderson could and would have offered favorable testimony as to appellant's character, his home and church life. (R. 64, Appendix 'C', p. 16.)

"Major Kenneth E. Moss, Voluntary Parole Supervisor for the County of Dallas, Salvation Army and Mr. William Dalton, Parole Officer in and for the County of Dallas, could and would have offered vital and material testimoney (sic) as to the existence and identity of the individual who left the stolen camera in appellant's possession. Further, they could and would have offered testimony as to appellant's character, his home life and of his adjustment in society. (R. 64, Appendix 'C', p. 18.)"

It is, of course, fundamental that there can be no due process without reasonable notice and a fair hearing. Twining v. State of New Jersey, 1908, 211 U.S. 78, 111, 29 S.Ct. 14, 53 L.Ed. 97; Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674; In re Oliver, 1948, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682. As Judge Biggs said for the Third Circuit in Hague v. Committee for Industrial Organization, 1939, 101 F.2d 774, 782:

"* * * He must have the opportunity to be heard and to call witnesses in his own defense. This is the very essence of due process of law as prescribed by the Fourteenth Amendment. Powell v. State of

Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575; United States v. Ballard, D.C., 12 F.Supp. 321, 325."

Appellant is entitled to a judicial hearing to ascertain the truth or falsity of his allegations as to denial of due process in what we have designated ground (4), as well as ground (3). Walker v. Johnston, supra; Waley v. Johnston, supra.

The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HUTCHESON, Chief Judge (dissenting).

If this were a proceeding brought by one in custody under a judgment of a federal court to obtain habeas corpus or Sec. 2255 relief and my differences with my colleagues arose out of whether, as a federal appellate court, they had taken a view of the merits of appellant's claims, with which I could not agree, I would not feel disturbed. I would content myself with simply stating in dissent that, as plainly appears from the statement of them in the opinion, the claims asserted are merely claims of error which under settled law in this circuit and elsewhere must be asserted by appeal, and that, as grounds for the extraordinary relief of habeas corpus, they are wholly insufficient, indeed are patently frivolous. This, however, is not such a case.

On the contrary, it is another of the growing number of cases in which federal appellate courts, asserting a kind of moral and legal superiority in respect to provisions made by state legislatures regarding criminal trials and the proceedings in state courts in respect of such trials, which they do not have, seek to exercise a suzerainty and hegemony over them which, under the Constitution, they do not now have, and, if we are to continue to hold to our federal system, they cannot in law and fact exercise. They do this by making habeas corpus proceedings brought by persons in custody *pursuant to a judgment of a state court*, serve the office of a second appeal. Only this time the appeal is to the federal courts to be considered and determined there by the exercise of a kind of supervisory and super appellate jurisdiction over state courts not governed by clear and settled rules and standards but by the personal opinion of the particular reviewer, whether in a particular instance he thinks provisions of state laws governing criminal prosecutions, and proceedings had in state courts in respect thereto, do or do not measure up to what he thinks due process requires of the state under the vague, obscure and very fluid conception of due process thus stated in Betts v. Brady, 316 U.S. 455, at page 462, 62 S. Ct. 1252, at page 1256, 86 L.Ed. 1595:

"Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." Cf. Crooker v. State of California, 357 U.S. 433, at page 441, 78 S.Ct. 1287, at page 1293, 2 L.Ed.2d 1448.

It is this statement and the flood of activist federal decisions asserting under it federal jurisdiction over state court judgments in criminal cases which is at the root of the feeling of state legislatures, state judges and state prosecutors, that federal judges are usurping authority and jurisdiction they do not have and makes them wonder and, wondering, ask on what meat have these, our federal judges, fed that they have grown so great. Cf. Darr v. Burford, 339 U.S. 200, at pages 210, 211, 212, 70 S.Ct. 587, 94 L.Ed. 761, and particularly the quotation in note 34 from statements by the late lamented Judge John J. Parker, made while serving as Chair-

man of the Committee on Habeas Corpus [1] of the Judicial Conference of the United States:

> " * * * The thing in mind in the drafting of this section was to provide that review of state court action be had so far as possible only by the Supreme Court of the United States, whose review of such action has historical basis, and that review not be had by the lower federal courts, whose exercise of such power is unseemly and likely to breed dangerous conflicts of jurisdiction. * * * " Parker, "Limiting the Abuse of Habeas Corpus", 8 F.R.D. 171, 176–177.

With deference to the views of the majority in this case, it seems clear to me that the jurisdiction they have sought to exercise and the decision they have made upon the claims and facts in this case are not in keeping with the views and principles set out above, but are repugnant thereto, as is also this criticism in the opinion of the requirements of Art. 543 of the Texas Code of Criminal Procedure:

> "Such detailed and technical requirements of a motion for continuance, no doubt, serve a salutary purpose in a proper case, but they cannot justify putting a defendant to trial when he has been given no fair opportunity to secure the attendance of his witnesses."

Preliminary to a precise consideration of the questions presented to and decided by the court, I point in opposition to the majority's statement, that the defendant persistently asserted his innocence, first to the fact that it appears from the record that the defendant took the stand on the trial of the case to testify on his own behalf and there admitted that he was a recidivist with a long criminal record of no less than seven previous convictions. I point, too, to the fact that when asked to explain his recent possession of the stolen camera, he made the patently false statement that, on October 13th, five days prior to October 18th, the day when, under the undisputed evidence, the camera disappeared from the car of its owner who had parked it near the State Fair Grounds in Dallas—he had been at the fair in the company of an unnamed penitentiary acquaintance of his who was carrying the camera; and that when this man departed he left the camera, and the defendant picked it up with the intention of returning it to its owner. He further stated: that, after holding it for about two weeks, because of his bad record—he was out on a governor's pardon from a former conviction at the time—and his fear of going to the police, he decided to put it in a locker and to send anonymously to the owner, whose name was on the camera, the key thereto; and that, while making his journey to the locker, he was apprehended by the police.

---

1. This committee, acting in concert with the Attorney General of the United States and with representatives of the Conference of Chief Justices of the States, of the Association of States Attorneys General, and of the Section of Judicial Administration of the American Bar Association, later submitted a proposed amendment to Sec. 2254, Title 28 U.S.C., developed by the committee with the approval of the representatives, as reported in the Proceedings of the 1954 meeting of the Judicial Conference, Sec. 22–24 at p. 22:

> "The committee found that many persons convicted by state courts are seeking release from state penal institutions by writs of habeas corpus in federal courts, claiming that constitutional rights had been denied them in the state courts, that although only an insignificant number of these petitions had been successful, they had imposed an unnecessary burden on the the federal courts and greatly interfered with the procedure of the state courts."

The committee's bill, therefore, provided among other things that "an order denying an application for a writ of habeas corpus by a person in custody pursuant to judgment of a state court shall be reviewable only on a writ of certiorari by the Supreme Court of the United States." (Emphasis supplied.)

The record also shows that appellant took and perfected an appeal from the judgment of conviction and applied for and was denied a writ of certiorari to the United States Supreme Court, and that, though he stated he was not represented by counsel, he did not complain either in the Court of Criminal Appeals or in the Supreme Court of the action of the court in providing him with the assistance of counsel and that he had suffered injury therefrom.

The district judge, carefully considering, in the light of the record, all his claims for relief, correctly, I think, denied them all as without merit and, as correctly, regarding them all as presenting no ground for the extraordinary relief of habeas corpus, denied a certificate of probable cause.

The majority, on the contrary, is of the opinion, incorrectly I think, that two of the claims put forward present grounds for such relief. One of these is that, though he appealed and his case was decided in the Court of Criminal Appeals of Texas, 301 S.W.2d 657, with certiorari denied by the United States Supreme Court, and, though he did not make any claim on appeal that he was prejudiced by the court's action in appointing counsel or the action of his counsel in conducting his case, the fact alone that the judge had appointed counsel to confer with and assist him was a denial of due process.

With deference, it seems entirely clear to me that this position of the majority that, without pointing to anything which his counsel did which interfered with or prevented him from doing what he wanted done, he can, merely because of the fact that he said to the judge that he did not want counsel but wanted to conduct his own case, now assert that he was thereby deprived of due process, is patently untenable. However, assuming that, though he failed to assert it on appeal, he can now assert it on habeas corpus, no case has been cited, I have found none in which it has even been suggested, much less held, that a defendant is deprived of due process merely because

the court, over his objection, appoints counsel to sit and confer with and assist him. Certainly none of the cases the majority cites in support of its view so hold. They all recognize that, while a defendant has a right to conduct his own case if the judge thinks him competent to do so, the judge has a wide and wise discretion in determining whether to appoint counsel to assist him, and not one of them has held, or even suggested, that the mere appointment of counsel, without a showing of harm therefrom, is a ground of error.

The second point, made by the majority, is no better taken. This is that the denial of his motion for continuance because of its failure to comply with the provisions of Art. 543 of the Texas Code of Criminal Procedure was a denial of due process. Here the majority, without pointing to any authority supporting the view, seems to think and say that the fourteenth amendment prevents or circumscribes the right of the Legislature of Texas to prescribe and of Texas courts to follow the prescribed procedure in criminal cases, and that it may be held that defendant has been deprived of due process when state procedure with regard to the requirements for motion for continuance does not conform to what the majority thinks due process requires.

Again, with deference but with complete conviction, I assert the law is absolutely settled otherwise. As pointed out in Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595, and the many cases cited in it which have so held from and since its adoption, the Fourteenth Amendment does not require state courts to adopt criminal procedure prescribed for or in use in federal courts. See also Gallegos v. State of Nebraska, 342 U.S. 55, 72 S.Ct. 141, 96 L.Ed. 86.

One of the prime provisions of the Texas statute is that when a continuance is sought for absence of witnesses, the facts which are expected to be proved by the witnesses must be shown "and it must appear to the court that they are material."

The defendant did not make such a showing, he does not make such now. The affidavits of those he puts forward are general and vague and state only that they could testify to matters which would aid defendant.

Under the facts of this case, to send it back to the district judge to try the issues presented is, I think, a complete rejection of the basic principle that a state, in matters in its own sphere, is sovereign, and that it is not subject to the supervision and control of federal courts.

I think the judgment should be affirmed, and I respectfully dissent from its reversal.

Rehearing denied; HUTCHESON, Chief Judge, dissenting.