Don Garriga CHAPMAN,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 75–4452.

United States Court of Appeals,
Fifth Circuit.

June 8, 1977.

Don G. Chapman, pro se.

L. D. Langley, Jr. (Court-appointed), Atlanta, Ga., for petitioner-appellant.

John W. Stokes, U. S. Atty., J. Robert Cooper, Asst. U. S. Atty., Atlanta, Ga., for respondent-appellee.

Before TUTTLE, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal from the denial of a motion to vacate sentence presents the question whether a criminal defendant who unequivocally asserts the right to defend pro se after his court appointed attorney has announced, "ready for trial," but before the jury has been empaneled, is entitled to represent himself as a matter of constitutional or statutory law. We hold that a demand for self-representation must be honored as timely if made before the jury is selected, absent an affirmative showing that it was a tactic to secure delay.

Don Garriga Chapman, for whom designated hitters have struck out in four at-bats before district courts and four previous trips to the plate before this court,[1] protests

---

1. *See Chapman v. United States*, 547 F.2d 1240 (5th Cir. 1977); *United States v. Harp*, 513 F.2d 786 (5th Cir.), *vacated and remanded*, 423 U.S. 919, 96 S.Ct. 258, 46 L.Ed.2d 246 (1975), *on remand*, 536 F.2d 601 (5th Cir. 1976); *Chapman v. United States*, 472 F.2d 117 (5th Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973); *United States v. Chapman*, 435 F.2d 1245 (5th Cir. 1970), *cert. denied*, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654 (1971).

that the trial court erred by refusing to let him pinch-hit for himself while his court appointed attorney was still in the on-deck circle. On the day of his trial for attempted escape from a federal penitentiary, Chapman announced that he wished to defend himself on the basis of temporary insanity and to dismiss his counsel, who had judged that defense meritless. The trial court declined Chapman's request. After his conviction and unsuccessful appeal, Chapman filed this § 2255 motion, challenging the denial of his right to defend pro se. The lower court rejected Chapman's post-conviction attack, holding that his motion to represent himself was untimely. We reverse.

## I.

The appellant was one of ten men indicted for attempting to escape from a federal penitentiary. At his arraignment on December 14, 1973, Chapman pleaded not guilty. On December 21 the court appointed counsel to represent him. During counsel's meetings with Chapman in early January 1974, the appellant urged upon his counsel the wisdom of relying solely on a defense of temporary insanity. Convinced either of the cogency of Chapman's argument or the depth of its absurdity, counsel requested, and the court ordered, a psychiatric evaluation of the appellant.

On January 18, 1974, the psychiatrist reported his conclusion that Chapman was sane at the time of the offense and that he was competent to stand trial. On January 30, Chapman's counsel told appellant his

insanity defense was without merit. Chapman was adamant. His uncontradicted assertion is that he explicitly demanded that his counsel resign from the case so that he might conduct his own defense.

At the calendar call on February 1, 1974, Chapman's counsel nevertheless announced that the defense was ready for trial subject to the disposition of pending motions regarding Chapman's competence to stand trial. At a pretrial conference that afternoon, counsel informed the court that Chapman had requested his discharge. Counsel apparently did not indicate whether Chapman desired the court to appoint a substitute counsel or to grant Chapman permission to conduct his own defense.[2]

Chapman was excluded from the February 1 conference. He remained in prison. Consequently, he contends, he had no opportunity directly to communicate his wishes to the court. Chapman claims that had he attended the conference he would there have demanded the right to represent himself. Chapman's earliest opportunity directly to address the court came, instead, on February 11, 1974, the day on which his jury trial began.

On February 11, prior to the empaneling of the jury, Chapman twice unequivocally announced to the court his desire to represent himself. The trial court weighed the possibility of allowing Chapman to conduct the trial pro se while his appointed counsel remained at the counsel table. Ultimately, however, the trial court rejected this alternative and denied Chapman's request to defend pro se.[3]

---

**2.** Chapman's counsel seems on one occasion to have supposed that he did tell the court something of Chapman's desire to represent himself. During a colloquy with the judge prior to trial on February 11, 1974, counsel observed:

> Your Honor, if you recall, in the pretrial conference that we had Friday afternoon about a week ago, I had indicated to you that Mr. Chapman had a matter that he wanted to present to the Court on his own behalf concerning [the question of temporary insanity]. On the other hand, the court's reaction when Chapman explicitly asserted his right to defend pro se on February 11 suggests that counsel

had not previously communicated his client's wishes to the court.

**3.** The relevant portions of the transcript begin after Chapman addresses the court and reiterates his desire to discharge his appointed counsel, Mr. McDonald:

> THE COURT: I know, but he told me you wanted to fire him sometime ago. Why didn't you write me?
> MR. CHAPMAN: Well, he said he would put in a motion, and then—
> THE COURT: Well, he mentioned it to me and I told him that I would not give you another attorney, because I feel that Mr. McDonald was competely [sic] competent.

The court offered two reasons for denying Chapman's request. First, the court cited the lateness of the request. Second, the court questioned whether Chapman's planned defense of temporary insanity was colorable in light of the psychiatrist's conclusions to the contrary.

After an unsuccessful appeal, Chapman brought the instant motion to vacate sentence pursuant to 28 U.S.C. § 2255. The court below dismissed the motion without a hearing. The court reasoned that Chapman's demand to defend pro se was untimely and, hence, committed to the discretion of the trial court. The court below concluded that the trial court did not abuse its discretion because Chapman's belated request might have caused inconvenience or delay and because Chapman's defense might be prejudiced were he incompetent to represent himself even though competent to stand trial. The court offered no support from the record for these conclusions.[4]

## II.

■ Defendants in federal court have long been guaranteed by statute the right to conduct their own defense. 28 U.S.C. § 1654.[5] *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which involved a state criminal defendant, made clear that the sixth amendment itself grants to every criminal defendant, state or federal, the personal right to conduct his own defense. *Faretta* held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon a defendant who properly asserts that right.

■ The appellee argues that *Faretta* does not apply retroactively and that the trial court's denial of Chapman's statutory right to defend pro se was, at worst, harmless error. Insofar as this argument assumes that application of the harmless error doctrine to Chapman's case will vary according to whether the right has a constitutional or statutory basis, the argument is mistaken. In any event, however, the right asserted by Chapman rested on a constitutional basis.

The right to have a lawyer is a treasured one, but the corresponding right to refuse a lawyer's help is also given constitutional dignity. We are loathe to deprive a defendant of the latter right unless compelled to do so by clear and commanding precedent.

### A.

Two considerations militate decisively in favor of the view that Chapman asserted a

---

MR. CHAPMAN: Well, I would rather not have an attorney, Your Honor.

THE COURT: I will do one of two things: I will either let Mr. McDonald represent you or I will let you represent yourself, but I am going to let him stay with you at counsel table—no, I won't let you do that. I am not going to let you do that. I will just have to deny your motion, Mr. Chapman. If I have made a mistake, if I have committed some error, the Court of Appeals will correct it, or if after this trial is over I discover that I have done something that is improper, I will correct it myself.

MR. CHAPMAN: I would rather not have the gentleman with me, Your Honor. I would rather handle it myself and let it go.

THE COURT: No, sir, I can't do that. I will deny your motion. There is nothing I can do at this late stage. You have not indicated to me that you have any medical testimony to controvert the testimony of your own psychiatrist.

---

4. The court did note that Chapman had been adjudicated incompetent and committed to a mental institution, though it failed to mention that this occurred in 1949 and that Chapman had apparently been out of the institution for many years. The psychiatric report on Chapman concluded that he was completely sane at the time of trial and that his behavior followed a problem-solving, utilitarian orientation. The psychiatrist averred that Chapman was also completely sane at the time of his attempted escape from prison. The report noted that Chapman had been motivated to escape for purely practical reasons that belied his claim of temporary insanity. *Cf.* J. Heller, *Catch-22* (1955).

5. 28 U.S.C. § 1654 provides:

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

right grounded in the federal constitution. First, the question of the retroactivity of *Faretta* does not arise under the circumstances of this case. Alternatively, even were the retroactivity of that decision at issue, we would apply it retroactively to a defendant tried in federal court.

■ The question of retroactivity arises only when the Supreme Court forges a "new rule".[6] Whatever the novelty in some jurisdictions of a constitutional basis for the right to defend pro se, federal courts in general and this court in particular have traditionally found a sixth amendment basis for the right to conduct one's own defense. The Supreme Court early on indicated in dictum that the constitutional right to have the assistance of counsel carries with it a "correlative right to dispense with a lawyer's help." *Adams v. United States ex rel., McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). Relying on this dictum, in *MacKenna v. Ellis*, 263 F.2d 35, 40–41 (5th Cir. 1959), this court declared of a state prisoner, whose petition for habeas obviously could not rest on § 1654, that:

> [t]he defendant, being sui juris and mentally competent, had a right to rely on his own skill and ability and to conduct his defense in person without the assistance of counsel; and the court was not justified in imposing assigned counsel on the defendant against his will.

Subsequently, in *Juelich v. United States*, 342 F.2d 29, 30 (5th Cir. 1965), we recognized that "this and other Courts of Appeals have deduced that in a criminal prosecution the right to defend pro se is a constitutionally protected right." *See Middlebrooks v. United States*, 457 F.2d 657, 659

(5th Cir. 1972) (decision to defend pro se is exercise of defendant's "freedom of choice"); see also *United States v. Pike*, 439 F.2d 695 (9th Cir. 1971); *United States v. Warner*, 428 F.2d 730 (8th Cir. 1970), cert. denied, 400 U.S. 980, 91 S.Ct. 194, 27 L.Ed.2d 191 (1971); *Lowe v. United States*, 418 F.2d 100 (7th Cir. 1969), cert. denied, 397 U.S. 1048, 90 S.Ct. 1378, 25 L.Ed.2d 660 (1970); *Arnold v. United States*, 414 F.2d 1056 (9th Cir. 1969), cert. denied, 396 U.S. 1021, 90 S.Ct. 593, 24 L.Ed.2d 514 (1970); *United States v. Plattner*, 330 F.2d 271 (2d Cir. 1964).

■ Second, even had we not explicitly characterized the right to defend pro se as a sixth amendment right prior to *Faretta*, the constitutional basis of that right should be retroactively applied at least where the right was independently guaranteed by § 1654.[7] To begin with, the fundamental place of § 1654 in our scheme of justice is illustrated by the history of that statute. The precursor of § 1654 was enacted by the First Congress as section 35 of the Judiciary Act of 1789, 1 Stat. 73, 92. It was passed in the context of colonial tribunals composed largely of laymen. Section 35 was enacted by the Congress and signed by President Washington one day before the sixth amendment was proposed.

■ Apart from this constitutional aura surrounding § 1654, moreover, the benign consequences of retroactively recognizing the sixth amendment basis of § 1654 would commend that course to us. Mere prospectivity should be the exception and not the rule, lest such limited application vitiate constitutional rights, privileges, and obligations that may effectively be secured retro-

---

6. The Supreme Court's test for whether a "new rule" in the area of criminal procedure is to be retroactively applied calls for the consideration of three criteria: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the admininstration of justice of a retroactive application of the new standards." *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965).

7. *Compare People v. McDaniel*, 16 Cal.3d 156, 127 Cal.Rptr. 467, 545 P.2d 843 (1976) (holding that *Faretta* rule was to be applied prospectively only, *i.e.*, in cases where accused sought self-representation in a trial that commenced after date *Faretta* was filed) *with Stepp v. Estelle*, 524 F.2d 447, 450–52 (5th Cir. 1975) (applying *Faretta* retroactively, albeit without considering the criteria for retroactivity established by Supreme Court).

actively. Unlike those cases to which the Supreme Court has denied retroactive effect, it cannot be said of *Faretta* that there has been extensive reliance by law enforcement officers on a different prior standard, nor will the constitutionalization of a right heretofore guaranteed by statute significantly disrupt the administration of justice by reopening otherwise final convictions.

Finally, the right to defend *pro se* is a personal right of the defendant, *see Faretta v. California, supra,* 422 U.S. at 832–834, 95 S.Ct. at 2540–41, not an essentially instrumental doctrine like the exclusionary rule, which in its deterrence aspect alone may not be aided by retroactive application. Chapman's personal right to defend pro se may still be vindicated.

### B.

██ Regardless of whether the right to defend pro se has a statutory or constitutional basis, however, appellee's contention that any error was harmless is wholly misguided. The government argues, first, that the insanity defense upon which Chapman sought to rely was frivolous and could not have aided appellant's cause.[8] Second, appellee points out that all the issues Chapman would have wished to present to the court were in fact raised.

8. Indeed, this court said on direct appeal that the temporary insanity defense was frivolous. *United States v. Harp, supra,* 513 F.2d at 788.

9. We have, to be sure, said in dictum that the denial of a defendant's pro se right is harmless if the defendant was not prejudiced. *Juelich v. United States, supra,* 342 F.2d at 33. Insofar as "prejudice" refers to the possibility that the court might have reached a different result, we disapprove this dictum. Having decided that the right to defend oneself is a sixth amendment right, we could in any event give it no effect in the case at bar. The dictum referred solely to a situation in which the pro se right no longer rested on a constitutional basis. That is, although *Juelich* acknowledged that a criminal defendant has a sixth amendment pro se right at trial, that opinion was concerned solely with the right, if any, of a § 2255 movant to argue his motion to vacate sentence pro se. *Juelich* determined that such a petitioner no longer possessed a sixth amendment pro se right, and hence applied the test for nonconstitutional error. 342 F.2d at 31–32. Compare

Even assuming the truth of these claims, they cannot save any error committed by the trial court in denying Chapman his pro se right. The nature of the right to defend pro se renders the traditional harmless error doctrine peculiarly inapposite.[9] Unlike other constitutional rights, the right to represent oneself is not "result-oriented." The normal operation of the harmless error doctrine is in cases where the challenged error concerns a right accorded the defendant to facilitate his defense or to insulate him from suspect evidence. *See United States v. Dougherty,* 154 U.S.App.D.C. 76, 473 F.2d 1113, 1127–28 (1972). By contrast, we recognize the defendant's right to defend pro se not primarily out of the belief that he thereby stands a better chance of winning his case, but rather out of deference to the axiomatic notion that each person is ultimately responsible for choosing his own fate, including his position before the law. A defendant has the moral right to stand alone in his hour of trial and to embrace the consequences of that course of action. As the court said in *United States v. Dougherty, supra,* even a defendant doomed to lose has the right

> to the knowledge that it was the claim that he put forward that was considered and rejected, and to the knowledge that in our free society, devoted to the ideal of

*United States v. Plattner, supra,* 330 F.2d at 273, where the court observed:

> The right to act pro se . . . is a right arising out of the federal constitutional and not the mere product of legislation . . . .
> Thus we would be required to remand the case even if no prejudice to [defendant] were shown to have resulted from the refusal to permit him to act pro se.

There is, however, another sense of "prejudice" in this dictum from *Juelich* that illustrates a more appropriate use of the harmless error doctrine. The court noted that defendant was not prejudiced because he was permitted to question witnesses, argue his case, assign additional grounds for his § 2255 motion, and otherwise directly participate in the proceedings, despite his request to defend pro se having been denied. *United States v. Juelich,* 348 F.2d at 33. A defendant afforded a genuine opportunity to help conduct his defense may be in no way harmed by the denial of his formal motion to defend pro se.

individual worth, he was not deprived of his free will to make his own choice, in his hour of trial, to handle his own case. *Id.* at 1128.

Accordingly, it is wholly irrelevant whether the result of Chapman's trial might have been different had the court deferred to his wish to represent himself. The only grounds appellee adduces for applying the harmless error doctrine pertain to result. If the denial of self-representation as untimely asserted was error we must reverse.

### III.

Because, as we have seen, the relative merit of Chapman's defense of temporary insanity is entirely irrelevant in determining whether the trial court erred by refusing to allow him to defend pro se, the only remaining ground on which that decision may stand is the notion that Chapman's assertion of the right was untimely.

We reject this notion. Chapman's request was not a ninth inning ploy. The umpire had dusted off the plate, the lineup cards had been delivered, but Chapman demanded to defend pro se before the first pitch was thrown. Accordingly, we send appellant's motion to vacate sentence into extra innings.

### A.

■ To be sure, the question whether the right is timely asserted does not exhaust a trial court's inquiry. The election to defend pro se entails the waiver of the right to be represented by counsel. Hence the right of self-representation is conditioned on the "knowing and intelligent" relinquishment of the right to counsel. *See Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541; *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461. *Cf. Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (plurality opinion of Black, J.). Lest there be a case in which a defendant clearly asserts the right to defend pro se (so that denial of the right would be error) without clearly waiving the right to counsel (so that there remains some question whether the waiver was knowing and intelligent), a trial judge should engage in a dialogue with such a defendant, explaining to him the consequences of defending pro se. *Faretta* admonishes that the defendant must be "made aware of the [advantages] and disadvantages of self-representation." *Faretta v. California, supra,* 422 U.S. at 835, 95 S.Ct. at 2541.[10]

■ Similarly, because a decision to defend pro se may jeopardize a defendant's chances of receiving an effective defense, and because a pro se defendant cannot complain on appeal that his own defense amounted to a denial of effective assistance of counsel, courts have required that the demand to defend pro se be stated unequiv-

10. We do not address the question whether a defendant may be competent to stand trial but not to waive his right to counsel. *Cf. Westbrook v. Arizona,* 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966). There have been suggestions that there may be a point of mental incompetency, short of inability to understand the nature of the criminal charges, at which a defendant lacks the capacity to waive counsel and represent himself. *See United States v. Dougherty, supra,* 473 F.2d at 1123 n. 13. It may also be asked whether if there were such a point, it would be wholly encompassed within the *Johnson v. Zerbst* test. For example, might a defendant be sufficiently dissociated that, despite a knowing and intelligent waiver, he is nonetheless manifestly incapable of sustaining such lucidity throughout a criminal trial? *See generally Stepp v. Estelle,* 524 F.2d 447 (5th Cir. 1975) (district court's finding that habeas petitioner did not have mental capacity intelligently and competently to waive right to counsel was clearly erroneous). Assuming that a trial court might deny a request to go pro se where granting that request would result in a gross miscarriage of justice because of defendant's mental incapacity, however, nothing in the record would support the claim that Chapman came close to the line at which the trial court might exercise this option. And even in cases close to that line, it must be remembered that the trial judge would retain his power to prevent a miscarriage of justice by asking questions and calling witnesses, by appointing amicus curiae, or by setting aside a conviction and granting a new trial. *See United States v. Dougherty, supra,* 473 F.2d at 1128 n. 28.

ocally.[11] Chapman's desire to represent himself was directly and unequivocally communicated to the trial court.[12]

### B.

Both the trial court and the court below based their decisions not on the foregoing notions, but primarily on the view that Chapman's assertion of the right to defend pro se was untimely. In assessing this view, we must look both to the purposes a timeliness requirement might be thought to serve and to the functional significance of the declaration, "ready."

In the interest of minimizing disruptions and maintaining continuity at trial, most courts of appeals have established the rule that the fundamental right to conduct the case pro se must be claimed before the trial begins. Although some courts that imposed this condition of timeliness did not clearly recognize a constitutional basis of the right to defend pro se, *see, e. g., United States v. Dougherty, supra,* 473 F.2d at 1124, even courts that did recognize its constitutional basis held that the right must be timely asserted. *See, e. g., United States v. Price,* 474 F.2d 1223, 1227 (9th Cir. 1973); *United States v. Pike, supra,* 439 F.2d at 695; *United States v. Catino,* 403 F.2d 491, 497–98 (2d Cir. 1968); *United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 15 (2d Cir. 1965), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966). For example, the pre-

vailing rule in the Second Circuit was summarized as follows:

The right of a defendant in a criminal case to act as his own lawyer is unqualified if invoked prior to the start of the trial. Once the trial has begun with the defendant represented by counsel, however, his right thereafter to discharge his lawyer and to represent himself is sharply curtailed. There must be a showing that the prejudice to the legitimate interests of the defendant overbalances the potential disruption of proceedings already in progress, with considerable weight being given to the trial judge's assessment of this balance.

*United States ex rel. Maldonado v. Denno, supra,* 348 F.2d at 15 (citations omitted). In *Faretta* itself, the Supreme Court did not have to face the problem because the defendant in that case had asserted the right weeks before trial. *Faretta v. California, supra,* 422 U.S. at 807, 95 S.Ct. at 2527.

There have been suggestions that *Faretta* casts doubts on the practice of characterizing the pro se right as unqualified before trial but committed to the discretion of the court thereafter. *United States v. Garcia,* 517 F.2d 272, 277 n. 4 (5th Cir. 1975), has been read to suggest that *Faretta* may have "eroded" earlier decisions that relied on this distinction between pre- and mid-trial assertions of the right.[13] *See* 37 Ohio St.L.J. 220, 235 (1976); *see also* Grano, *The Right*

---

**11.** *See Faretta v. California, supra,* 422 U.S. at 834, n. 46, 95 S.Ct. at 2540, 45 L.Ed.2d at 581.

**12.** Chapman's assertion of the right to defend pro se is usefully contrasted with that of the defendant in *United States v. Bennett,* 539 F.2d 45, 50–51 (10th Cir. 1976). In that case the court held that the record supported lower court findings that defendant forfeited his right to self-representation by vacillating on the issue.

Even after the defendant has unequivocally asserted the right to defend pro se, he may waive that right. This represents in part the waiver of a waiver insofar as the defendant waives his right to waive appointed counsel. *Cf. United States v. Mahar,* 550 F.2d 1005 (5th Cir. 1977). For example, in *United States v. Montgomery,* 529 F.2d 1404, 1406 (10th Cir.), *cert. denied,* 426 U.S. 908, 96 S.Ct. 2231, 48 L.Ed.2d 833 (1976), the defendant waived the

right to proceed pro se when he allowed the public defender to conduct plea bargaining on his behalf, accepted the benefits of the plea bargaining by pleading guilty to a lesser offense, and otherwise knowingly and voluntarily dropped the pro se demand.

**13.** At least at first blush, it is difficult indeed to see why *Faretta* would affect the distinction between pre-trial and mid-trial assertions of the right to defend pro se in circuits that previously recognized the constitutional basis of that right. *See Sapienza v. Vincent, supra,* 534 F.2d at 1010. One commentator has nevertheless asserted that because *Faretta* emphasizes that a defendant should not be bound to an attorney who represents his client in a manner with which defendant strongly disagrees, that decision demands extreme deference even to mid-trial assertions of the right. *See* 37 Ohio St.L.J. 220, 234 (1976).

*to Counsel; Collateral Issues Affecting Due Process,* 54 Minn.L.Rev. 1175, 1181–84 (1970) (criticizing distinction prior to *Faretta* ). *But see Sapeinza v. Vincent,* 534 F.2d 1007, 1010 (2d Cir. 1976) (distinction survives *Faretta* ); *People v. Windham,* 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977) (right to defend pro se is unconditional only if invoked within a reasonable time prior to commencement of trial); *People v. Reason,* 37 N.Y.2d 351, 354, 372 N.Y. S.2d 614, 334 N.E.2d 572 (1975) (pro se motion is timely if presented prior to prosecutor's opening statement); *Barnes v. State,* 258 Ark. 565, 528 S.W.2d 370, 374 (1975).

▇▇ For purposes of the case at bar, we need not decide how to treat the right to defend pro se when it is asserted during trial. Although clarification is needed in this circuit, we await a case presenting the relevant factual circumstances. In the case at bar, the defendant asserted his right to defend pro se before the jury was empaneled, and hence before his trial began.

The conclusion that Chapman's assertion of the right was timely is supported both by decisions that recognized a constitutional right to defend pro se and by decisions that recognized only a statutory right. The Ninth, Second, and District of Columbia Circuits have held that the right to self-representation is timely if asserted before the jury is empaneled, at least where there is no suggestion that the motion to defend pro se is a tactic to secure delay. *United States v. Price, supra,* 474 F.2d at 1227; *United States ex rel. Maldonado v. Denno, supra,* 348 F.2d at 16; *United States v. Dougherty, supra,* 473 F.2d at 1119, 1124. The court's holding in *Denno* for example, could not have been more emphatic:

We hold that if [the defendants] clearly sought to represent themselves, after their cases had been called on the calendar but before the jury had been chosen, they had an unqualified right to have their requests granted. At this stage there was no danger of disrupting proceedings already in progress.

*Id.* at 16.[14]

If there is to be a Rubicon beyond which the defendant has lost his unqualified right to defend pro se, it makes far better sense to locate it at the beginning of defendant's trial, when the jury is empaneled and sworn, than when defense counsel announces "ready." First, the declaration "ready" at a calendar call bears no functional relation to the pro se right or to the actual beginning of trial; there may be many cases on a court's docket, and delays as long as the eleven days in this case between "ready" and trial are not uncommon. Second, a defendant may not appear at calendar call, and his first opportunity directly to address the court regarding his counsel may be the day of his trial. Third, the defendant may acquire disconcérting information about the substance or manner of his counsel's planned defense only once his counsel begins the voir dire. Fourth, the expense of any delay rises dramatically once the jury is empaneled. Finally, a midtrial change to a pro se defense may be thought to disrupt the continuity of ongoing proceedings, a danger not present when the defendant asserts his right to defend himself before the jury is sworn.

Whatever significance ought to be placed on empaneling the jury, it would be particularly unfair to ascribe any significance to the declaration of "ready" under the circumstances of the case at bar. Chapman's counsel announced that he was "ready" while knowing that Chapman wished to discharge him, that Chapman wished to represent himself, and that no one had yet

---

14. Compare *Stepp v. Estelle, supra,* 524 F.2d 447, where we approved the trial judge's decision to allow a defendant to proceed pro se even though defendant first asserted that right during the prosecutor's voir dire examination of a potential juror. The defendant had broken with his appointed attorneys when they indicated their wish to abandon the defense of insanity at defendant's state trial for robbery by assault. Although that decision is not necessarily inconsistent with leaving the disposition of the right in the discretion of the court, there is language in our opinion suggesting that even at this late stage in the proceedings the defendant was entitled to his full rights under *Faretta.*

informed the judge of a choice Chapman had already announced to his counsel. Indeed, on February 1 the judge postponed until February 11 consideration of Chapman's request to discharge his counsel while at the same time accepting counsel's declaration of "ready."

To allow Chapman's right to defend pro se to be foreclosed merely by his counsel's declaration of ready would be fundamentally unfair when, as here, Chapman no longer wanted his attorney to represent him. One can hardly say that the defense is "ready" if a defendant has already parted ways with his appointed counsel. As the Supreme Court observed in *Faretta:*

> An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

422 U.S. at 821, 95 S.Ct. at 2534, 45 L.Ed.2d at 573–74.

Finally, there is no suggestion in the record that Chapman's assertion of his pro se right was designed to achieve delay or tactical advantage, that it would in fact have resulted in any delay, or that the trial court denied Chapman's request on the assumption that it would result in delay. The record does show that Chapman denied he was asking for a continuance; though he did not promise he would not later ask for a continuance, nothing in the record suggests that the trial could not have begun as scheduled.

In sum, Chapman should not have been denied his constitutional right to represent himself on the ground that his assertion of the right was untimely. He asserted the right before the jury had been empaneled, and there is no suggestion that he sought to delay or disrupt the trial.

### IV.

The Supreme Court's decision in *Faretta* has clarified the source of the right to defend *pro se* while leaving open the proce-

dural requirements for asserting that right. *See Faretta v. California, supra,* 422 U.S. at 846, 95 S.Ct. at 2546. (Blackmun, J., dissenting). In delineating those requirements, courts must consider the fundamental nature of the right and the legitimate concern for the integrity of the trial process. Particular requirements can be justified only insofar as they are functionally related to reconciling those interests. The trial judge offered as reasons for denying Chapman's *pro se* right only that Chapman's insanity defense lacked merit and that Chapman asserted the right at a late stage in the proceedings. The first reason is irrelevant, and the second does not here permit the denial of Chapman's *pro se* right. Chapman's assertion of the right was timely.

We have touched base more than once in this opinion with the game of bat and glove. Yet this should but underscore the proposition that prosecuting an accused under our system of justice is not a game. A game has rules that are arbitrary because constitutive of the activity of playing. A trial has rules that must be rationalized only according to the ultimate purpose of assuring that justice be done. It is serious business.

Trial of an accused is not an automaton's paradise where the word "ready" impels machinery into a motion to which no amount of constitutional direction can give pause. A trial is not a dueling contest in which the duelists shoot their pistols at the command, "fire." We are unwilling to ascribe to the word "ready" a talismanic significance unrelated to its function in the trial process. The benediction of imposing a sentence is more important than the exact timing of the invocation "ready" that leads to that unhappy denouement.

A defendant must have a last clear chance to assert his constitutional right. If there must be a point beyond which the defendant forfeits the unqualified right to defend pro se, that point should not come before meaningful trial proceedings have commenced. We have not entered the age of stop-watch jurisprudence.

The judgment of the district court dismissing appellant's motion to vacate sentence is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.