**James Robert SCOTT, Jr., Petitioner,**

v.

**Louie L. WAINWRIGHT, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent.**

**No. 78–4–Civ–Oc.**

United States District Court,
M. D. Florida,
Ocala Division.

Magistrate's Opinion Feb. 22, 1979.

Judge Scott's Order April 20, 1979.

Richard A. Belz, Florida Legal Services, Inc., Prison Project, Gainesville, Fla., for petitioner.

William I. Munsey, Jr., Asst. Atty. Gen., Tampa, Fla., for respondent.

OPINION

CHARLES R. SCOTT, Senior District Judge.

This is a habeas corpus case in which petitioner, James Robert Scott, Jr., contends that the trial court's refusal to allow him to defend pro se was error of constitutional magnitude. The case was referred to the Honorable Harvey E. Schlesinger, United States Magistrate, for findings of fact and conclusions of law. After an evidentiary hearing was held, the Magistrate issued his report on February 22, 1979, recommending that the petition be denied and the case dismissed.

Petitioner has challenged the Magistrate's conclusions of law on two grounds. First, he contends that the law of the Fifth Circuit at the time of his trial afforded him a constitutional right of self-representation. Secondly, in the alternative, petitioner argues that, even if the law of the Fifth Circuit did not so provide, the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which established the constitutional right to self-representation, should be applied retroactively. These arguments are the same as those made before the Magistrate.

The Court has thoroughly reviewed the record and weighed the arguments of both parties. The issues raised by petitioner present difficult and far-reaching problems regarding the administration of justice to those who sought to represent themselves before state courts. In his report and recommendation, the Magistrate analyzed in detail the decisions relied upon by both parties, and the Court is convinced that the analysis is correct.

Although pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* determination of those portions of the Magistrate's report and recommendation to which objections have been filed, the Court feels it can add little to the reasoning em-

ployed by the Magistrate in resolving these difficult questions. Consequently, the Magistrate's report and recommendation is adopted as the opinion of the Court, and, accordingly, the petition for writ of habeas corpus will be denied and the case dismissed.

## REPORT AND RECOMMENDATION

HARVEY E. SCHLESINGER, United States Magistrate.

### FACTS

Petitioner, JAMES ROBERT SCOTT, JR., was convicted in state court for the offenses of false imprisonment and kidnapping and robbery on April 9, 1974. Appeal of the conviction was taken to the Second District Court of Appeal of Florida where on February 12, 1975, the Petitioner's conviction was affirmed. Post-conviction relief was also denied by the trial court on July 26, 1975. An appeal of this order was also affirmed by the Second District Court of Appeal of Florida. A petition for a writ of certiorari to the Supreme Court of the United States was filed and subsequently denied. Thereafter, this petition for writ of habeas corpus was filed.

Prior to Petitioner's original trial, he filed a *pro se* Motion to Dismiss the public defender and represent himself. A hearing was held, and the trial judge entered an order denying the defendant's request. The Petitioner then proceeded to trial utilizing the services of his appointed public defender. Upon conviction, Petitioner filed several documents *pro se*, including notice of appeal, assignment of errors, brief of appellant, and a motion for non-appointment of counsel. Although Petitioner's direct appeal was handled by the office of the public defender, the issue of self-representation was raised and preserved. The issue before this Court is whether the trial court's denial of Petitioner's demand to defend *pro se* was a deprivation of a constitutional right.

### CONCLUSIONS OF LAW

#### I. *MacKENNA AND ITS PROGENY*

The first argument to be considered is whether the law of the Fifth Circuit at the time of Petitioner's original trial provided for a constitutional right to absolute self-representation. It is argued that *MacKenna v. Ellis*, 263 F.2d 35 (5th Cir. 1959), and its progeny established the rule that a defendant who is *sui juris* and mentally competent has an absolute right to defend *pro se*; absolute, meaning not forcing the defendant to have assistance of counsel.

In the original *MacKenna* case, the Petitioner sought relief from conviction through a petition for writ of habeas corpus in federal court. One of the bases alleged was that MacKenna had been denied due process of law when the trial court required him to accept incompetent counsel rather than allow him to represent himself. In discussing this point, the court pronounced the oft-quoted statement that:

> . . . [t]he defendant, being sui juris and mentally competent, had a right to rely on his own skill and ability to conduct his defense in person without the assistance of counsel; and the court was not justified in imposing assigned counsel on the defendant against his will. *Id.* at 41.

This was grounded on the Supreme Court case of *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). That case involved a defendant in a federal mail fraud case who not only represented himself, but waived his right to a jury trial. The Court of Appeals had concluded that a defendant in a federal criminal case could not effectively waive his right to a jury trial without the assistance of counsel in making that decision. The court stated at page 275, 63 S.Ct. at page 240:

> The short of the matter is that an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel.

The court went on to state at page 277, 63 S.Ct. at page 241:

The question in each case is whether the accused was competent to exercise an intelligent, informed judgment—and for determination of this question it is of course relevant whether he had the advice of counsel. But it is quite another matter to suggest that the Constitution unqualifiedly deems an accused incompetent unless he does have the advice of counsel. If a layman is to be precluded from defending himself because the Constitution is said to make him helpless without a lawyer's assistance on questions of law which abstractly underlie all federal criminal prosecutions, it ought not to matter whether the decision he is called upon to make is that of pleading guilty or of waiving a particular mode of trial. Every conviction, including the considerable number based upon pleas of guilty, presupposes at least a tacit disposition of the legal questions involved.

In a further discourse on what rights a criminal defendant had in a federal case, the court continued at page 279, 63 S.Ct. at page 241 by stating:

> The right to assistance of counsel and correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. *But the Constitution does not force a lawyer upon a defendant.* He may waive his constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. *Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024, 1025, 82 L.Ed. 1461. [Emphasis added.]

The court concluded that if a person can waive his right to counsel he may also, without the advice of counsel, waive his right to a jury trial.

The *MacKenna* court, *supra*, continued, clarifying the purpose and extent of the rule quoted above saying:

> Clearly, we think, it would be a *denial of due process* of law for the court to refuse to permit the accused, sui juris and mentally competent, to defend himself and, instead, *require him to accept the services of inexperienced and incompetent counsel, as is alleged in the petition for habeas corpus. The appellant is entitled to a hearing to ascertain the truth or falsity of such allegations.* Id. at 41. [Emphasis added.].

The allegations made were that his "forced" attorneys were of no assistance at all. The Court of Appeals remanded the case to the District Court for the purpose of giving MacKenna an opportunity to prove his allegations.

After the District Court had ruled on remand, the case was again before the Court of Appeals. *MacKenna v. Ellis*, 280 F.2d 592 (5th Cir. 1960). That opinion makes even more clear the holding of the first *MacKenna* case. After making the initial determination that Texas law preserved the question, the court stated the issue to be "whether, in the unusual circumstances of this case, the trial judge offended due process in appointing counsel, over the protest of the accused." In resolving the issue, the court first noted that the right to counsel means the right to *effective counsel* which included the undivided loyalty of the attorney. The record of the hearing held upon remand indicated that the attorneys appointed by the trial court had less than six months experience between them. They had handled but one case previously. Further, at the time of their appointment each of the young lawyers was awaiting openings in the district attorney's office. The court reasoned that due to this inexperience and conflict of interest, it was not surprising that the attorneys were willing to accommodate the district attorney to the possible detriment of petitioner. In holding that MacKenna had been denied a fair trial, the court said:

A trial judge who appoints fledgeling attorneys as defense counsel, over the defendant's protest, cannot wash his hands of their mistakes.

The court further stated:

As we see it, an essential element of the fair trial of a defendant with court-appointed counsel is trial court sensitivity to protecting the defendant against obvious mistakes of young, inexperienced, appointed counsel. A genuflection in the direction of justice by the pro forma appointment of counsel such as MacKenna had is something less than adequate judicial guidance in *the furnishing of effective counsel to an accused.* [Emphasis added.] *Id.* at 601.

The *MacKenna* case, as the undersigned reads it by itself, stands only for the proposition that a defendant is denied due process if he is forced to accept the services of inexperienced or incompetent counsel. The primary issue was ineffective assistance of counsel, not the right to self-representation.

The problem posed is thus: if the Court does not read *MacKenna* to mean that a *sui juris*, mentally competent defendant in state court has a constitutional right to absolute self-representation, how could the state trial judge in this case be held to so interpret that case? As will be seen later, it took the Fifth Circuit until 1977 to state that *MacKenna* actually meant that the absolute right to self-representation is grounded in the Sixth Amendment right to counsel rather than under the due process provisions. By only gazing into a crystal ball could this be seen prior to that time. Such is not required of courts. As stated by the Supreme Court in *Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) at page 156, 89 S.Ct. at page 941:

It would have taken extraordinary clairvoyance for anyone to perceive that this language meant what the Supreme Court of Alabama was destined to find that it meant more than four years later; and, with First Amendment rights hanging in the balance, we hesitate long before assuming that either the members of

the Commission or the petition possessed any such clairvoyance at the time of the [trial] . . ..

By looking at those subsequent cases citing *MacKenna* is the issue of an absolute constitutional right to self-representation in a state criminal trial presented? I feel that until after the completion of petitioner's trial, it was not.

In *Lee v. Alabama,* 406 F.2d 466 (5th Cir. 1969), *cert. denied,* 395 U.S. 927, 89 S.Ct. 1787, 23 L.Ed.2d 246, for instance, the issue was whether there was evidence supporting the petitioner's claim that there had been a conspiracy in the trial court to try petitioner although he was insane. The question of the petitioner's self-representation dealt with that right only in regard to the habeas corpus proceedings. The issue was raised apparently to show only that petitioner's waiver of counsel in the collateral proceedings was not affected by his claimed incompetence at trial. The court said:

[W]e think it clear, under the circumstances, that in this habeas corpus proceeding Lee has not been unconstitutionally denied the assistance of counsel either in the district court or on appeal. *Id.* at 469.

Although reference was made to *MacKenna,* the court explicitly recognized that the petitioner's *pro se* right was grounded on statutory authorization, viz. 28 U.S.C. § 1654, and used *MacKenna* only to support its conclusion that in a *federal habeas* case neither the trial court, nor the court of appeals could force counsel on an individual who wishes to represent himself. This conclusion was reached by referring to *Adams, supra,* and *Juelich v. United States,* 342 F.2d 29 (5th Cir. 1965).

An element of this statutory right [28 U.S.C. § 1654] was at issue in *Juelich.* There petitioner had attempted to represent himself in a § 2255 action. The district court's denial of petitioner's motion to dismiss appointed counsel was raised on appeal. As in *Lee,* the court did not decide whether a defendant in state court is constitutionally entitled to absolute self-representation. Although citing *MacKenna* for

the view that in a criminal prosecution the right to defend *pro se* is constitutionally protected, the court said:

> [t]hat question need not be decided in this case, for while the Sixth Amendment right to counsel extends through direct appeal of the judgment or conviction, a movant under 28 U.S.C. § 2255, has passed beyond the stage of an "accused" in "defense" of "a criminal prosecution", and the Sixth Amendment does not apply. *Id.* at 31–32.

Moreover, the court went on to say that there could be instances where allowing a defendant to defend *pro se* would be a *denial* of due process under the Fifth Amendment. The court also found that any error in denying Juelich his statutory right [28 U.S.C. § 1654] would not warrant reversal since counsel had been able, diligent, and faithful. If *MacKenna* created an absolute right to self-representation, why then did the court refer to the harmless error doctrine which is not applicable to constitutional violations? Perhaps, the answer is that *Juelich* was a habeas case and not a direct criminal appeal. Support for this can be found in *Chapman v. United States*, 553 F.2d 886 (5th Cir. 1977) at 891 n. 9, which will be discussed later. Again, then, the Court in *Juelich* was not dealing specifically with the state criminal defendant's absolute right to defend *pro se*.

*MacKenna* was also cited in *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). The issue there was whether two defendants in a federal criminal trial could waive the right to have their retained counsel free from conflicts of interest. The court rejected the government's suggestion that it is impossible to waive the right to counsel saying:

> If defendants may dispense with the right to be represented by counsel altogether, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *MacKenna v. Ellis*, 263 F.2d 35 (5th Cir. 1959), it would seem that they may waive the right to have their counsel free from conflicts of interest. *Id.* at 277.

Thus, the holding of the case concerned the waiver of conflict-free counsel. *MacKenna* could be cited here only for the view that in certain situations counsel could be waived, while the cite to *Faretta* was for any absolute right to self-representation that existed. As in *Lee* and *Juelich*, the holding did not deal specifically with the constitutional right of a state criminal defendant to represent himself.

*Garcia* was decided subsequent to Petitioner's trial and in reality was another federal criminal case relating to effective waiver of counsel, not the forcing of an attorney on a defendant who wished to represent himself. This reasoning is inescapable because that court concluded by stating at page 278:

> We hold only that if, as a matter of fact, a defendant after thorough consultation with the trial judge [in federal cases?] knowingly, intelligently and voluntarily wishes to waive this protection [effective and competent assistance of counsel], the Constitution does not prevent him from so doing.

*Garcia* was decided on August 8, 1975, approximately one month after the Supreme Court decided *Faretta*, *supra*. The reason for this historical comment reveals itself in footnote 4 found on page 277 of *Garcia*. The court in reaching its conclusion that a defendant may dispense with representation of counsel "altogether" stated:

> In reaching this conclusion, we are cognizant of a line of cases indicating that the right to dispense with counsel at trial is not absolute but may be denied in appropriate circumstances. E. g., *Manson v. Pitchess*, 317 F.Supp. 816 (C.D.Cal. 1970); *Seale v. Hoffman*, 306 F.Supp. 330 (N.D.Ill.1969); *United States v. Davis*, 260 F.Supp. 1009 (E.D.Tenn.1966). While we offer no judgment as to the cogency of these decisions, we find their rationales inapplicable to the facts of this case. Moreover, the recent decisions in *Faretta v. California*, *supra*, seems to seriously erode the holdings of these cases. In the instant litigation, the defendants are seeking not to proceed pro se but rather to retain the same counsel who represent-

ed them in state criminal and federal grand jury proceedings. Furthermore, there is no clear indication that a knowing and intelligent waiver of the right to effective counsel in these circumstances would adversely affect the defendants', the prosecutor's, or the public's interest in a fair trial.

If *MacKenna* established an absolute right to self-representation, why then this comment? Obviously, even one month after *Faretta*, the Fifth Circuit was not settled on whether *Faretta* stood for that proposition. Surely, if *MacKenna* meant this, the footnote would have stated that this circuit, since *MacKenna*, has concluded the law to be just the opposite. Rather than offering "no judgment as to the cogency of these decisions" the court would have stated that *MacKenna* conferred an absolute right to self-representation. This statement was made after the Supreme Court in *Faretta* cited *MacKenna* 422 U.S. at page 817, 95 S.Ct. at page 2532 for the proposition that both the Fifth and Sixth Amendments guarantee "the right of the accused personally to manage and conduct his own defense in [criminal cases]."

The Court cannot conclude that the Supreme Court held *MacKenna* covered an absolute right to self-representation in this circuit because *Garcia* is to the contrary. The holding of *Garcia* was extended to state criminal defendants in *Gray v. Estelle*, 574 F.2d 209 (5th Cir. 1978). There, counsel in the state trial had been retained by petitioner upon the agreement that the attorney's criminal complaint against petitioner in another case would be dropped. Having recognized that a conflict existed, the court remanded with directions for the district court to determine whether a voluntary, knowing, and intelligent waiver had been made. The decision, of course, still meant that the defendants would be represented by counsel, whether conflict-free or otherwise. *MacKenna* was cited only for the proposition that a defendant may dispense with counsel.

Finally, the case of *Chapman v. United States*, 553 F.2d 886 (5th Cir. 1977) is like-wise not decisive. There, petitioner had been tried in *federal court* for a *federal crime*. Under 28 U.S.C. § 1654, defendants in federal court have the statutory right to self-representation. The question before the court was whether Chapman had asserted that right in a timely manner. However, even though it may be contained in *obiter dictum*, we need to explore *Chapman* to see if it might tell us what the state of the law was in this circuit between *MacKenna* and *Faretta*.

*Chapman* held that a demand by a state criminal defendant for absolute self-representation must be honored if it is unequivocally asserted in a timely manner. The court stated at page 889:

Defendants in federal court have long been guaranteed by statute the right to conduct their own defense. 28 U.S.C. § 1654. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which involved a state criminal defendant, made clear that the sixth amendment itself grants to every criminal defendant, state or federal, the personal right to conduct his own defense. *Faretta* held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon a defendant who properly asserts that right.

Thus, for the first time the Fifth Circuit mentions the absolute right to self-representation, or, in other words, whether the Constitution prohibits the forcing of an attorney on a state criminal defendant who wants to represent himself. This statement was based upon the Supreme Court's pronouncement in *Faretta*.

The United States attempted to argue that *Faretta* was not applicable because it could not apply retroactively. They also argued that Chapman's absolute right to self-representation in his federal case was based upon statutory grounds (28 U.S.C. § 1654) rather than constitutional ones, and, therefore, the harmless error doctrine applied.

The remainder of the court's ruling of interest in this case is the conclusion that the court was not faced with an issue of the retroactivity of *Faretta*. The court stated at page 890:

> The question of retroactivity arises only when the Supreme Court forges a "new rule". Whatever the novelty in some jurisdictions of a constitutional basis for the right to defend pro se, federal courts in general and this court in particular have traditionally found a sixth amendment basis for the right to conduct one's own defense. The Supreme Court early on indicated in dictum that the constitutional right to have the assistance of counsel carries with it a "correlative right to dispense with a lawyer's help." *Adams v. United States ex rel. McCarnn*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). Relying on this dictum in *MacKenna v. Ellis*, 263 F.2d 35, 40–41 (5th Cir. 1959), this court declared of a state prisoner, whose petition for habeas obviously could not rest on § 1654, that:
>
> > [t]he defendant, being sui juris and mentally competent, had a right to rely on his own skill and ability and to conduct his defense in person without the assistance of counsel; and the court was not justified in imposing assigned counsel on the defendant against his will.

If *MacKenna* stands for the proposition that *Chapman* says it does, then the original *MacKenna* case would not have been remanded. If *MacKenna* had an absolute right to self-representation, his petition would have been granted and the *writ* of *habeas corpus* issued. This must be so because he was represented by court-appointed counsel, over his objections, and yet the Fifth Circuit did not say "your constitutional rights have been violated so we will grant you relief." Instead, they ordered the case remanded to determine whether his attorneys were ineffective and incompetent. That question did not have to be answered if forced counsel, by itself, violated the constitutional rights of a state criminal defendant.

This is supported by *Juelich, supra*, as explained above. Realizing that that decision applied the harmless error doctrine, even though it dealt with a federal case, not a state case, the *Chapman* court stated at page 891 in footnote 9:

> We have, to be sure, said in dictum that the denial of a defendant's pro se right is harmless if the defendant was not prejudiced. *Juelich v. United States, supra*, 342 F.2d at 33. Insofar as "prejudice" refers to the possibility that the court might have reached a different result, we disapprove this dictum. Having decided that the right to defend oneself is a sixth amendment right, we could in any event give it no effect in the case at bar. The dictum referred solely to a situation in which the pro se right no longer rested on a constitutional basis. That is, although *Juelich* acknowledged that a criminal defendant has a sixth amendment pro se right at trial, that opinion was concerned solely with the right, if any, of a § 2255 movant to argue his motion to vacate sentence pro se. *Juelich* determined that such a petitioner no longer possessed a sixth amendment pro se right, and hence applied the test for nonconstitutional error. 342 F.2d at 31–32. Compare *United States v. Plattner, supra*, 330 F.2d [271] at 273, where the court observed:
>
> > The right to act pro se . . . is a right arising out of the federal constitutional [sic] and not the mere product of legislation . . . . Thus we would be required to remand the case even if no prejudice to [defendant] were shown to have resulted from the refusal to permit him to act pro se.
>
> There is, however, another sense of "prejudice" in this dictum from *Juelich* that illustrates a more appropriate use of the harmless error doctrine. The court noted that defendant was not prejudiced because he was permitted to question witnesses, argue his case, assign additional grounds for his § 2255 motion, and otherwise directly participate in the proceedings, despite his request to defend pro se having been denied. *United States v. Juelich*, 348 F.2d at 33. A defendant

afforded a genuine opportunity to help conduct his defense may be in no way harmed by the denial of his formal motion to defend pro se.

If *Adams, supra* and *MacKenna* made it a constitutional violation to force counsel on a state criminal defendant, *Faretta* would not have been a landmark case. Additionally, *MacKenna* would be in direct conflict with *Adams.* The law of the land would have been decided in 1942 in *Adams* where the court states 317 U.S. at page 279, 63 S.Ct. at 242: "the Constitution does not force a lawyer upon a defendant." Yet that phrase for 33 years, until 1975, was never held to mean that forcing such counsel would be a constitutional violation. If *Adams* had so held, then the *MacKenna* court would have granted the writ. A *per se* constitutional violation would have taken place.

The Supreme Court in *Faretta* cites *Adams* at 422 U.S. page 814, 95 S.Ct. at page 2531, and states that the:

> . . . case does not of course, necessarily resolve the issue before us. It held only that "the Constitution" does not force a lawyer upon a defendant . . whether the Constitution forbids a state from forcing a lawyer upon a defendant is a different question.

While *Chapman* says that the law in this circuit since *MacKenna* has been that a "court is not justified in imposing assigned counsel on the defendant against his will" it never accorded such a statement its rightful constitutional position until 1977. The *Chapman* court stated at page 890:

> Second, even had we not explicitly characterized the right to defend pro se as a sixth amendment right prior to *Faretta*, the constitutional basis of that right should be retroactively applied at least where the right was independently guaranteed by § 1654. To begin with, the fundamental place of § 1654 in our scheme of justice is illustrated by the history of that statute. The precursor of § 1654 was enacted by the First Congress as section 35 of the Judiciary Act of 1789,

1 Stat. 73, 92. It was passed in the context of colonial tribunals composed largely of laymen. Section 35 was enacted by the Congress and signed by President Washington one day before the sixth amendment was proposed.

Such a holding shows that the court violated the sacred rule of constitutional law that a court should never reach a constitutional issue when the case can be resolved on other grounds. *United States v. Rias,* 524 F.2d 118 (5th Cir. 1975); *Ashwander v. TVA,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936). *Chapman* could have been decided under 28 U.S.C. § 1654, and there was no need for the court to reach any constitutional issues. *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

No one doubts that prior to *Faretta* the Fifth Circuit explicitly said that the right to defend *pro se* is guaranteed by the Fifth and Sixth Amendments. However, this is not the same thing as saying that the "forcing of any attorney" on a state criminal defendant violates the Constitution. Not until 1977, in *Chapman* which followed *Faretta* by two years, was this latter rule pronounced in this Circuit.

*Faretta* and *Chapman* do forge a new constitutional rule. Until these decisions, the cases had only directed state trial judges to allow criminal defendants, under certain circumstances, to knowingly, intelligently, freely, and voluntarily waive their right to the assistance of counsel. These prior cases did not say that the Constitution requires all such defendants to be assisted by counsel. Now, subsequent to *Faretta* and *Chapman*, state trial judges know that forcing an attorney on one who has a constitutional right to absolute self-representation may violate that right.

The question here is not that of abandoning *stare decisis* and overruling a prior constitutional decision, *Burnett v. Coronado Oil & Gas Co.,* 285 U.S. 393, 52 S.Ct. 443, 76 L.Ed. 815 (1932), but rather, that of a new

interpretation of what an already founded constitutional right means. As in *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 1611, 16 L.Ed.2d 694 (1966), the holding of *Faretta* and *Chapman* were not "innovation[s] in our jurisprudence, but [are] an application of principles long recognized and applied in other settings." Here, the principle was applied for the first time in 1975. (For a recent discussion of the difference between holdings and dicta as it relates to *stare decisis*, see "Stare Decisis," 79 F.R.D. 509.)

■ Upon this closer look, it becomes clear that prior to *Faretta*, it had not been specifically held that a defendant in a state court criminal trial had an absolute right to defend *pro se*. Petitioner's reliance on *MacKenna* and its progeny is misplaced.

While it may appear that this conclusion avoids the language of *Garcia* and *Chapman* as they interpret *MacKenna*, neither case, nor any others in this circuit prior to *Faretta*, held that it is a constitutional violation to force counsel on a *pro se* state criminal defendant. This court only concludes that while the law in this circuit between *MacKenna* and *Faretta* was that the right to *pro se* representation is rooted in the Fifth and Sixth Amendments, until *Faretta*, it was not decided that those same amendments meant that forcing an attorney would deprive a state criminal defendant of those constitutional protections.

Support for this distinction between the right of a criminal defendant to waive counsel and defend *pro se*, is found in those cases dealing with a defendant's right to waive a jury trial. In *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 620 (1965), on certiorari to the Supreme Court, Singer challenged the trial court's refusal to allow the waiver of a jury trial. Petitioner argued that a defendant in a federal criminal case has not only an unconditional constitutional right to a trial by jury, but also a correlative right to waive a jury and have his case decided by a judge

alone. The petitioner's contention was based on the case of *Patton v. United States*, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930) which held that in some instances a defendant can waive his right to a trial by jury. In rejecting the petitioner's argument, the court observed that:

> The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right. *Id.* 380 U.S. at 34–35, 85 S.Ct. at 790.

The court in *Faretta* recognized this axiom, saying that: "[T]he inference of rights is not, of course, a mechanical exercise." *Faretta, supra*, 422 U.S. at 819, 95 S.Ct. at 2533, footnote 15. Moreover, the court thereupon followed the reasoning of *Singer*, stating:

> We follow the approach of *Singer* here. Our concern is with an independent right of self-representation. *We do not suggest that this right arises mechanically from a defendant's power to waive the right to the assistance of counsel. . . .* On the contrary, the right must be independently found in the structure and history of the constitutional text. *Id.* (emphasis added)

If, as it is concluded above, *MacKenna* and its progeny hold only that a criminal defendant has the constitutional right to waive the assistance of counsel, then, prior to *Faretta*, even in the Fifth Circuit, the question of whether a trial court could force counsel on a defendant without violating the defendant's constitutional rights was unanswered.

## II. RETROACTIVITY OF FARETTA

The Petitioner's second contention is that the absolute rule of *Faretta v. California, supra*, should be applied retroactively. The Fifth Circuit has not ruled directly on this issue. In *Stepp v. Estelle*, 524 F.2d 447 (5th Cir. 1975), the principles laid down in *Faretta* regarding self-representation were reviewed. The case, however, is inapposite. There, the petitioner in a § 2254 action, sought relief from a state court conviction on the grounds that his waiver of counsel

had not been knowing and intelligent. The district court's grant of the writ was reversed on the basis that the petitioner had been competent to defend *pro se* and, therefore, his waiver of counsel was valid. *Faretta* was raised only to determine whether the petitioner's self-representation was itself a violation of a constitutional right. The court's holding was in line with the requirements originally announced in *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) dealing with waiver of constitutional rights.

The case of *Chapman v. United States, supra,* is again not determinative. Although the language there would indicate that the Fifth Circuit is leaning toward retroactivity, such pronouncements can only be viewed as *dict.* The court expressly stated that the question of retroactivity was not then an issue.

> First, the question of retroactivity of *Faretta* does not arise under the circumstances of this case. Alternatively, even were the retroactivity of that decision at issue, we would apply it retroactively to a defendant tried in *federal court.* (Emphasis added) *Id.* at 890.

■ Therefore, without solid precedent in the Fifth Circuit to guide this decision, other jurisdictions and circuits may be consulted. The issue of retroactivity is governed generally by the criteria enunciated in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) where it was said:

> The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of the reliances by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

The California Supreme Court in *People v. McDaniel*, 16 Cal.3d 156, 127 Cal.Rptr. 467, 545 P.2d 843 (Cal.1976), *cert. denied,* 429 U.S. 847, 97 S.Ct. 131, 50 L.Ed.2d 119 (1976), a unanimous decision, after applying the *Stovall* criteria, held that *Faretta* should not be applied retroactively even to cases on direct appeal. The Eighth Circuit in *Martin v. Wyrick*, 568 F.2d 583 (8th Cir. 1978), *cert. denied,* 435 U.S. 975, 98 S.Ct. 1623, 56 L.Ed.2d 69, approved of the California court's analysis in its decision to deny retroactive application in a case where the issue was squarely presented. The Eighth Circuit's reasoning is persuasive. First, the court found that the purpose of *Faretta* was not to enhance the reliability of the truth-determining or fact-finding process and, therefore, little or no weight is added to the balance in favor of retroactive application since litle or no prejudice in the trial itself is suffered by an accused whose guilt was determined without benefit of the new rule. Second, since the long-recognized practice was to place self-representation within the discretion of the court, justifiable reliance also favored non-retroactivity. Finally, recognizing that retroactive application could require new trials for a number of convicted persons, retroactive application of the rule would have an adverse effect on the administration of justice. This analysis holds true in the case at hand. In light of these decisions and the absence of direct authority in the Fifth Circuit, *Faretta* should not be applied in this case.

Consequently, Petitioner is incorrect on both of his contentions.

## RECOMMENDATION

For the foregoing reasons, the Petition should be DENIED and this case dismissed.